No. 25-2551

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

SUNOCO PIPELINE L.P.,

*Appellant,*

v.

DANIEL LA HART,

individually and on behalf of a class of others similarly situated,

*Appellees.*

(Additional Parties on Inside Cover)

---

Appeal from the United States District Court for the Eastern District of
Pennsylvania, U.S. District Judge Mia R. Perez,
Case No. 2:25-cv-3694-MRP

---

## BRIEF OF THE APPELLEES

---

JORDAN C. HUGHES
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
(763) 340-0285

SHANON J. CARSON
Y. MICHAEL TWERSKY
JOSEPH E. SAMUEL, JR.
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 875-4656

*Counsel for Appellees*

KATHERINE LA HART, individually and on behalf of a class of others similarly situated; ROBERTA GELTCH, individually and on behalf of a class of others similarly situated; JAMES GELTCH, individually and on behalf of a class of others similarly situated; ANDREW MELA, individually and on behalf of a class of others similarly situated; HEATHER MELA, individually and on behalf of a class of others similarly situated; W. SCOTT MILLER, individually and on behalf of a class of others similarly situated; MARYIDA MILLER, individually and on behalf of a class of others similarly situated; JOHN VANNI, individually and on behalf of a class of others similarly situated; ANGELA VANNI, individually and on behalf of a class of others similarly situated; KEVIN WOJNOVICH, individually and on behalf of a class of others similarly situated; KRISTINE WOJNOVICH, individually and on behalf of a class of others similarly situated; BASIL TSOLAKIS, individually and on behalf of a class of others similarly situated; FOTEINI TSOLAKIS, individually and on behalf of a class of others similarly situated; GERALD TSOLAKIS, individually and on behalf of a class of others similarly situated; MANTHA NIKOLOUDAKI, individually and on behalf of a class of others similarly situated,

*Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

COUNTER-JURISDICTIONAL STATEMENT ............................................... 1

COUNTER-STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF RELATED CASES ........................................................ 4

COUNTER-STATEMENT OF THE CASE .................................................. 5

    I.    Appellant's Years-Long, Unquantified, and Potentially Continuing Release of Toxic Jet Fuel and Petroleum Products from its Pipeline. .. 5

    II.    Injured Residents' Litigation to Recover for Harms Caused by Appellants' Pipeline Release. ............................................................... 6

    III.    Appellant's Federal Court Lawsuit Against Injured Residents. ........... 9

SUMMARY OF THE ARGUMENT .......................................................... 11

STANDARD OF REVIEW ..................................................................... 13

ARGUMENT ...................................................................................... 14

    I.    Appellant's Lawsuit Fails to Confer Federal Subject Matter Jurisdiction. ....................................................................................... 14

        A.    The Complaint Is Constitutionally Barred for Lack of Article III Standing ................................................................ 15

            1.    Appellant does not allege an injury-in-fact. .................. 15

            2.    Appellant cannot establish causation ........................... 18

            3.    Appellant cannot establish redressability. .................... 20

        B.    The District Court Lacks Subject Matter Jurisdiction over Appellants' Preemption Defense ............................................. 23

    II.    The Anti-Injunction Act Bars Appellant's Request for Injunctive Relief. ................................................................................................. 31

        A.    The PSA Does Not Expressly Authorize Injunctions of State Court Proceedings ................................................................... 32

        B.    The PSA Does Not Satisfy the *Mitchum* Test for Express Authorization ........................................................................ 35

            1.    Stays of State Court Proceedings Are Not Necessary to Give the PSA its Intended Scope ............................... 36

2.      There Is No Evidence that the PSA Focuses on State Judicial Proceedings ........................................................42

III.     The PSA Itself Mandates Dismissal of Appellant's Case. .................47

CONCLUSION .........................................................................................................49

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*,
968 F.2d 401 (3d Cir. 1992)..................................................................36

*ADP, LLC v. Rafferty*,
923 F.3d 113 (3d Cir. 2019)..................................................................13

*Amalgamated Clothing Workers of America v. Richman Bros.*,
348 U.S. 511 (1955)....................................................................... 32, 35

*Anchel v. Shea*,
762 A.2d 346 (Pa. Super. Ct. 2000)......................................................20*,*

*ANR Pipeline Co. v. Iowa State Commerce Comm'n*,
828 F.2d 465 (8th Cir. 1987)........................................................... 43, 44

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................48

*Askins v. Ohio Dep't of*,
*Ag.*, 809 F.3d 868 (6th Cir. 2016) ........................................................28

*Associated Builders & Contractors W. Penn. v. Cmty. Coll. of Allegheny Cnty.*,
81 F.4th 279 (3d Cir. 2023)................................................... 3, 14, 15, 16

*Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*,
398 U.S. 281 (1970) ..................................................................32, 34, 46

*Burton v. Schamp*,
25 F.4th 198 (3d Cir. 2022)...................................................................3

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) ............................................................................24

*Cheverez v. Plains All Am. Pipeline, LP*,
No. 15-cv-4113, 2016 WL 4771883 (C.D. Cal. Mar. 4, 2016) ............................37

*Chick Kam Choo v. Exxon Corp.*,
  486 U.S. 140 (1988) ................................................................. 23, 34

*CKHS, Inc. v. Prospect Medical Holdings, Inc.*,
  329 A.3d 1204 (Pa. 2025) ..................................................................19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................11, 16, 19, 20

*Couser v. Shelby Cnty, Iowa*,
  139 F.4th 664 (8th Cir. 2025) ...........................................................38

*Davis v. Sunoco Pipeline Ltd. P'ship*,
  No. 346729, 2020 WL 3397386 (Mich. Ct. App. June 18, 2020) ......................37

*Denny's Inc. v. Cake*,
  364 F.3d 521 (4th Cir. 2004).......................................................... 12, 29

*Doe v. Virginia Dept. of State Police*,
  713 F.3d 745 (4th Cir. 2013)...........................................................20

*Employers Resource Mgmt. Co., Inc. v. Shannon*,
  65 F.3d 1126 (4th Cir. 1995)..........................................................44

*Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*,
  68 F.4th 815 (3d Cir. 2023).............................................................14

*Finkelman v. Nat'l Football League*,
  810 F.3d 187 (3d Cir. 2016)...........................................................17

*Fischer v. United States*,
  603 U.S. 480 (2024) ....................................................................25

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*,
  602 U.S. 367 (2024) ............................................................... 18, 20, 21

*Goepel v. Nat'l Postal Mail Handlers Union*,
  36 F.3d 306 (3d Cir. 1994)..............................................................40

*Haaland v. Brackeen*,
  599 U.S. 255 (2023) ............................................................. 1, 21, 22, 23

*Hallstrom v. Tillamook County*,
    493 U.S. 20 (1989) ................................................................. 13, 48, 49

*Hassan v. Gov't. of Virgin Islands*,
    861 F.3d 108 (3d Cir. 2017)........................................................... 14, 47

*Hatfield Township v. Lexon Ins. Co.*,
    15 A.3d 547 (Pa. Commw. Ct. 2011)....................................................39

*In re B-727 Aircraft Serial No. 21010*,
    272 F.3d 264 (5th Cir. 2001)...............................................................41

*Jennings v. Boenning & Co.*,
    482 F.2d 1128 (3d Cir. 1973)........................................................ 41, 42

*Leiter Minerals, Inc. v. United States*,
    352 U.S. 220 (1957) ........................................................................40

*Lewis v. Acuity Real Estate Servs., LLC*,
    63 F.4th 1114 (6th Cir. 2023).............................................................26

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014).........................................................................26

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ................................................................ passim

*Metro. Edison Co. v. Pa. PUC*,
    767 F.3d 335 (3d Cir. 2014)....................................................... 1, 23, 30

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ................................................................. 31, 35

*Monsanto Co. v. Geertsen Seed Farms*,
    561 U.S. 139 (2010) ........................................................................16

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997)...............................................................48

*National Shooting Sports Foundation v. Att'y General of New Jersey*,
    80 F.4th 215 (3d Cir. 2023)................................................................18

*NGS Am., Inc. v. Jefferson*,
218 F.3d 519 (6th Cir. 2000).........................................................................passim

*Olympic Pipe Line Co. v. City of Seattle*,
437 F.3d 872 (9th Cir. 2006)...................................................................30

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ..............................................................................19

*Parkell v. Danberg*,
833 F.3d 313 (3d Cir. 2016)....................................................................21

*Penn. Servs. Corp. v. Texas Eastern Transmission, LP*,
No. 2:11-cv-1076, 2011 WL 13234909 (W.D. Pa. Oct. 12, 2011) .......................38

*Shell Oil Co. v. City of Santa Monica*,
830 F.2d 1052 (9th Cir. 1987)..................................................................44

*Southern Cal. Gas Co. v. Cnty of Los Angeles, Cal.*,
No. 17-cv-5140, 2017 WL 8793753 (C.D. Cal. Dec. 4, 2017) .................... 36, 44

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................ 15, 16

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024)....................................................................45

*Studebaker Corp. v. Gittlin*,
360 F.2d 692 (2d Cir. 1966)............................................................. 41, 42

*Tenneco Inc. v. Public Serv. Comm'n of West Virginia*,
489 F.2d 334 (4th Cir. 1973)....................................................................43

*Texas Midstream Gas Servs., LLC v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010)....................................................................38

*Torres-Jurado v. Administrator of Bergen County Jail*,
767 Fed. App'x. 227 (3d. Cir. 2019) ..........................................................21

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..............................................................................16

*Trump v. New York*,
   592 U.S. 125 (2020) ......................................................................1, 18

*U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko*,
   885 F.2d 1170 (3d Cir. 1989)....................................................... 42, 44

*United States v. Commonwealth of Penn., Dep't of Envtl. Res.*,
   923 F.2d 1071 (3d Cir. 1991).............................................................41

*United States v. Texas*,
   599 U.S. 670 (2023) ..........................................................................15

*Vautar v. First National Bank of Pennsylvania*,
   133 A.3d 6 (Pa. Super. Ct. 2016)........................................................39

*Vendo Co. v. Lektro-Vend Corp.*,
   433 U.S. 623 (1977) ................................................... 35, 36, 42, 46

*Washington Gas Light Co. v. Prince George's Cnty. Council*,
   711 F.3d 412 (4th Cir. 2013)..............................................................38

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ................................................................... 19, 20

*Williamson v. Mazda Motor of America, Inc.*,
   562 U.S. 323 (2011)...........................................................................38

*Younger v. Harris*,
   401 U.S. 37 (1971) ............................................................................27

Statutes

28 U.S.C. § 1292(a)(1)............................................................................1
28 U.S.C. § 2283 ........................................................................... passim
49 U.S.C. § 60101 ..................................................................................2
49 U.S.C. § 60102(a)(1)........................................................................37
49 U.S.C. § 60102(a)(2)........................................................................37
49 U.S.C. § 60104 ......................................................... 12, 24, 45, 46
49 U.S.C. § 60104(c) .................................................................. 19, 24
49 U.S.C. § 60121 .................................................................. 25, 33, 34
49 U.S.C. § 60120(c) .................................................................. 37, 38

49 U.S.C. § 60121(a) ........................................................................26
49 U.S.C. § 60121(a)(1).............................................................. passim
49 U.S.C. § 60121(a)(1)(A) ................................................... 13, 48
49 U.S.C. § 60121(d) ................................................... 13, 25, 26, 38
49 U.S.C. § 60122 ................................................................ 24, 28
49 U.S.C. § 60122(a), (f) .................................................................24
U.S. Const. art. III ........................................................................1, 3

<u>Regulations</u>

49 C.F.R. §§ 195.401, 195.444 ......................................................9

<u>Other Authorities</u>

*Natural Gas Pipeline Safety Act of 1968*,
   H.R. Rep. No. 90-1390 (May 15, 1968)......................................39
*Natural Gas Pipeline Safety Act Amendments of 1976*,
   H.R. Conf. Rep. 94-1660 (Sept. 22, 1976)..................................39

## COUNTER-JURISDICTIONAL STATEMENT

The District Court lacked subject matter jurisdiction pursuant to Article III of the U.S. Constitution, because Appellant did not and cannot point to any concrete injury caused by Appellees and redressable by the Court. As such, Appellant's requested relief would result in an unconstitutional advisory opinion. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992); *Trump v. New York*, 592 U.S. 125, 131 (2020); *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023).

The District Court also properly determined that it lacked subject matter jurisdiction over this case, pursuant to the binding precedents of this Court, because Defendants' purported claim is nothing more than a preemption defense. JA5 (citing *Metro. Edison Co. v. Pa. PUC*, 767 F.3d 335, 364 (3d Cir. 2014)). This Court should affirm that holding.

Because the District Court's Order denying Appellant's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion") denied both forms of relief, this Court has appellate jurisdiction to review the denial of the preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

## COUNTER-STATEMENT OF THE ISSUES

This case arises from Pennsylvania state court litigation in which local residents of Upper Makefield Township, Pennsylvania brought Pennsylvania tort law claims against pipeline operators (including Appellant) for the release of jet fuel

1

and other toxic petroleum products into the environment and groundwater underlying residents' properties. Each of the actions currently pending in state court alleges multiple claims and asserts entitlement to multiple and alternate forms of relief, including injunctive and declaratory relief as available under Pennsylvania law. Appellant has not attempted to remove any of the non-class state court actions to federal court. Appellant, along with its co-defendants, removed only the pending class action case to the U.S. District Court for the Eastern District of Pennsylvania; however, the District Court remanded the matter to state court pursuant to the local controversy exception to the Class Action Fairness Act. Two appeals of that decision, one brought erroneously as of right (No. 25-2152) and another brought by petition to appeal (No. 25-8027), are currently pending before this Court.

Appellant, prior to raising a federal preemption defense in any of the underlying cases pending in state court, needlessly filed this action in federal court suing Appellees, who are residents of the affected community that brought tort claims and related requests for equitable relief in state court (*i.e.*, suing *the victims* of the pollution). Appellant's case against these residents asserts a single cause of action: it alleges that by including a prayer for injunctive relief in their state court cases, the injured residents have run afoul of the express preemption clause of the federal Pipeline Safety Act ("PSA"), 49 U.S.C. § 60101, *et seq*. The same day that it filed its Complaint, Appellant filed its TRO Motion requesting an order that all

2

Appellees (residents named as plaintiffs in the underlying state court cases) "must cease any further efforts to obtain equitable relief in state court" against Appellant and its co-defendants, including efforts to obtain equitable relief unrelated to pipeline operations. JA224–26.

The District Court denied Appellant's TRO Motion in short order, finding that the federal Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283, barred the request and, separately, determining that the lawsuit fails for lack of subject matter jurisdiction. JA4–5. On appeal from this order, the following issues are presented:

1.    Does the Complaint satisfy Article III's requirements for standing?[1]

2.    Do federal district courts have subject matter jurisdiction to resolve an affirmative preemption defense to a claim being litigated in state court, when wrongly asserted as a freestanding claim for relief in a subsequently filed federal lawsuit?

3.    Does the PSA expressly authorize injunctions of state court proceedings for purported violations of its preemption clause?

4.    Do alternate grounds exist to affirm the District Court's Order?

---

[1] While not raised below, Appellees' argument that the Complaint fails for lack of Article III standing goes to the district court's subject matter jurisdiction and, as such, cannot be waived. *Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022) ("Lack of jurisdiction can be raised at any time."); *see also Associated Builders & Contractors W. Penn. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023).

## STATEMENT OF RELATED CASES

There are two other currently pending appeals before this Court arising out of the same nucleus of facts: *Daniel La Hart, et al. v. Sunoco Pipeline LP, et al.*, No. 25-2152, and *Daniel La Hart, et al. v. Sunoco Pipeline LP, et al.*, No 25-8027. Appellant and its co-defendants filed these appeals from the U.S. District Court for the Eastern District of Pennsylvania's order remanding the underlying class action lawsuit to the Philadelphia County Court of Common Pleas, pursuant to the local controversy exception to the Class Action Fairness Act.

Appellant also named as Defendants to this action the individual plaintiffs in the following state court actions: *Vanni v. Sunoco Pipeline L.P.*, No. 250400887; *Geltch v. Sunoco Pipeline L.P.*, No. 250502415; *Wojnovich v. Sunoco Pipeline L.P.*, No. 250402048; *Miller v. Sunoco Pipeline L.P.*, No. 250502415; *Mela v. Sunoco Pipeline L.P.*, No. 250502461; and *Tsolakis v. Sunoco Pipeline L.P.*, No. 250700919. Each of these cases are currently proceeding in the Philadelphia County Court of Common Pleas.[2] The present appeal concerns Appellant's effort to enjoin the state

---

[2] An additional individual complaint has been filed in the Philadelphia County Court of Common Pleas asserting claims (including claims for equitable relief) arising from the same underlying release of jet fuel and petroleum products: *Kuzniacki v. Sunoco Pipeline L.P.*, No. 250600768. The *Kuzniacki* plaintiffs are not represented by Appellees' counsel, and Appellant did not name the *Kuzniacki* plaintiffs as defendants to the present lawsuit.

courts' consideration of claims for equitable and injunctive relief filed by Upper Makefield Township residents in their underlying individual and class action cases.

## COUNTER-STATEMENT OF THE CASE

I.   **Appellant's Years-Long, Unquantified, and Potentially Continuing Release of Toxic Jet Fuel and Petroleum Products from its Pipeline.**

Appellant, along with other related entities (including Energy Transfer LP), owns and operates an interstate hazardous liquid pipeline transporting jet fuel and other petroleum products from Aston, Pennsylvania to Newark, New Jersey ("Twin Oaks Pipeline" or "Pipeline"). JA52. The Pipeline passes through Upper Makefield Township in Bucks County, Pennsylvania, where it leaked. JA52–57.

At least as early as September 2023, residents of Upper Makefield Township began reporting the odor of petroleum in their drinking water to the Pipeline's operators and state regulators. JA58–59. Appellant conducted insufficient and cursory investigations following at least four odor detection reports between September 2023 and December 2024, but each time failed to locate a leak from the Pipeline. JA58–66. In late January 2025, Appellant's investigation again failed to discover a leak. JA67. However, after independent testing confirmed the presence of petroleum constituents in a resident's well water, Appellant finally excavated a portion of the pipeline across the street from the location of the first (September 2023) odor complaint and visually confirmed an ongoing leak, of unknown duration,

from a rupture in a segment of the Pipeline reinforced with a 30-year-old Type A sleeve. JA66–68.

Shortly thereafter, Appellant's contractors opened the private well supplying water for drinking, bathing, and cooking purposes of the resident who made the September 2023 odor complaint—and found ***over 12 feet of free-floating jet fuel*** on top of the water in their private well. JA77.

Upon visually confirming their leak, Appellant initially reported a release of "156 barrels" of product into the surrounding environment to the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA"). JA69. Appellant, however, later admitted publicly that it had no valid basis for the "156 barrels" estimate reported to federal authorities. JA69–70, JA78–79. To this day, Appellant has not disclosed the full extent of the disaster. JA85.

Appellant states that its subsequent investigations "under PHMSA's oversight" have not identified any additional leakage from the Pipeline. Br. at 6; JA23. However, Appellant has not disclosed the results of any investigations or inspections performed on its Pipeline and does not allege that PHMSA participated in or oversaw any of its inspections. *See* JA23.

## II. Injured Residents' Litigation to Recover for Harms Caused by Appellants' Pipeline Release.

The Pipeline leak drastically affected the community, including by causing economic losses and deleterious effects on property values. Appellees Daniel and

Katherine La Hart filed a class action complaint against the Pipeline's operators, including Appellant, on March 27, 2025 in Pennsylvania state court. JA123. The *La Hart* complaint asserted several grounds for relief, including state law claims for equitable and injunctive relief related to the curtailment of ongoing harms to the Class. JA174–82. On April 24, 2025, Appellant and its co-defendants removed the *La Hart* complaint to federal court. JA28. On June 9, 2025, after amending their class action complaint, the La Harts filed a motion for a preliminary injunction in federal court. JA28. However, on June 16, 2025, the District Court remanded *La Hart* to state court pursuant to the Class Action Fairness Act, with the motion for preliminary injunction unresolved. JA30. The La Harts filed a renewed motion for preliminary injunction in state court on July 9, 2025, requesting identical relief to what they had requested in federal court, namely:

1. That Defendants ***temporarily*** shut down the Pipeline until the entire Pipeline has been excavated and inspected, or minimally, until at least all segments currently reinforced with Type-A sleeves have been visually inspected.

2. That Defendants immediately implement and pay all costs associated with the Proposed Environmental Sampling Protocol . . .

3. That Defendants expand and communicate the area for which they shall provide and pay for the maintenance of point-of-entry treatment ("POET") water filtration systems at Defendants' cost to encompass the entire area of the proposed Class.

4. That Defendants reimburse all residents for reasonable out-of-pocket costs expended to prevent potential toxic exposures and

7

protect their health, including but not limited to temporary housing for properties that test positive for toxins, blood testing, medical examinations, the purchase of water, and the installation and maintenance of water or air filtration systems, within thirty (30) days of receiving proof of any such incurred expenses.

5. That Defendants submit to the Resident class, under seal, a weekly report identifying all toxic substances and contaminants, even at trace levels, that have been found via any testing that has taken place to date or that takes place as a result of the protocol ordered by the Court, along with the location and date of each positive detection.

JA193 (emphasis added). Significantly, the majority of the requested relief is unrelated to the continued operation of the Pipeline, and Appellant has never offered even a facial basis for seeking to enjoin the relief requested in items 2–5.

On April 8, 2025, Appellees John and Angela Vanni filed an individual complaint against the Pipeline's operators, including Appellant, in Pennsylvania state court on behalf of themselves as individuals. *See Sunoco Pipeline L.P. v. La Hart et al.*, No. 2:25-cv-3694 (E.D. Pa.) ("District Court Docket"), ECF 1-17 (*Vanni* complaint). The *Vanni* complaint included a prayer for equitable and injunctive relief that closely resembled the request in the La Harts' class action complaint. *Id*. at 69–70. The other named Appellees filed similarly styled individual complaints in Pennsylvania state court between April and July 2025. JA27–28. Each of the individual complaints includes a claim for equitable and injunctive relief. JA27. However, none of the individual plaintiffs filed a motion for preliminary injunctive

relief in their individual state court cases. JA30. Appellant and its co-defendants have not removed any of the individual state court cases to federal court.

While every complaint filed against Appellant in state court for injuries arising from the Pipeline release asserts claims for equitable and injunctive relief under state law, *none* seek a permanent shutdown of the Pipeline or the imposition of new safety standards. *See, e.g.*, District Court Docket at ECF 1-14 (*Geltch* complaint), 1–15 (*Mela* complaint), 1–16 (*Miller* complaint), 1–17 (*Vanni* complaint), 1–18 (*Wojnovich* complaint), 1–19 (*Tsolakis* complaint). To the contrary, the prayers for equitable relief that Appellant takes issue with request only a temporary enjoinment of operations until the Pipeline is operating safely, and that the Pipeline's operators maintain an effective leak detection system—requests that are no broader than the operators' existing legal obligations. *See, e.g.*, District Court Docket, ECF 1-17 (*Vanni* complaint) at 70; *see also* 49 C.F.R. §§ 195.401, 195.444

## III.    Appellant's Federal Court Lawsuit Against Injured Residents.

On Friday, July 18, 2025, and without any prior notice, Appellant copied counsel for Appellees on a letter to PHMSA, notifying PHMSA (and Appellees) for the first time that Appellant considered the request for injunctive relief in the state court complaints to constitute a violation of the PSA. *See* JA119–20.

*That same day*, Appellant filed the Complaint, along with its TRO Motion, in the U.S. District Court for the Eastern District of Pennsylvania. JA14, JA224. The

TRO Motion sought an immediate injunction to prevent the state court overseeing the *La Hart* action from considering the pending motion for preliminary injunction, which was scheduled to be taken under advisement. JA225–26. The TRO Motion also sought to enjoin the other resident plaintiffs, who had filed individual actions, from seeking any similar injunctive relief in their own cases. JA226. Appellant obtained an Order from the District Court requiring Appellees to respond to the TRO Motion by 5:00 p.m. that Sunday, July 20, 2025. Appellant served that order, along with its Complaint and TRO Motion, on the undersigned counsel at 3:13 p.m. on Friday, July 18, 2025. *See* District Court Docket, ECF 20-1 (Memorandum in Support of Motion to Dismiss and for Sanctions), at 4, 16. Appellees responded to the TRO Motion within two days as ordered, and argued that the district court should deny the requested injunction because: (1) the AIA bars the requested relief; (2) Appellant could not show a likelihood of success because its failure to abide by the PSA's 60-day notice requirement mandated dismissal; and (3) Appellant could not show a likelihood of success because it had not stated a cognizable claim under the PSA.[3] JA268–88.

On Monday, July 21, 2025, the District Court denied Appellant's TRO Motion. The District Court found that the requested relief "would impermissibly

---

[3] In the event of a reversal, Appellees reserve the right to raise their arguments as to the merits of the PSA claim below, which the District Court did not reach.

interfere with an ongoing state proceeding in violation of the AIA," and separately found that the District Court "lacks subject matter jurisdiction over [Appellant's] freestanding preemption claim." JA4–5.

## SUMMARY OF THE ARGUMENT

Appellant's lawsuit is, at its core, an ill-advised effort to present an affirmative defense to state tort claims as a freestanding claim in what Appellant views as a more favorable forum—the federal courts. The District Court correctly found that such efforts fail to confer federal subject matter jurisdiction, and furthermore that Congress has barred federal courts from issuing the relief Appellant seeks. The District Court's Order should be affirmed.

Appellant's lawsuit first fails for a lack of standing under Article III. Appellant's theory of injury for the single cause of action alleged is that a state court *might* improperly grant a private litigant's request for injunctive relief that is preempted by federal law.[4] This kind of speculative injury, which is fully contingent on the discretionary functions of a third party, is insufficient to establish an injury-in-fact under Article III. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–14 (2013). Further, because the speculative injury depends on the discretionary functions of non-parties, Appellant cannot sufficiently allege that the injury is caused

---

[4] Although Appellant is wrong on the merits as to whether the injunctive relief sought in the underlying state courts here would even be preempted by the PSA, the District Court did not reach this issue and this Court need not either.

by Appellees. Finally, because Appellees themselves lack the power to impose or enforce a threatened injunction, the relief Appellant seeks against them would not redress the described injury and would amount to no more than an unconstitutional advisory opinion.

Appellant's lawsuit separately fails for a lack of subject matter jurisdiction, because as the District Court correctly noted Appellant's "claim" is *only* cognizable as a preemption defense. Neither the text, context, nor purpose of the PSA provide evidence that the citizen suit provision at 49 U.S.C. § 60121(a)(1) creates a private right of action to enforce the preemption clause at 49 U.S.C. § 60104. To the contrary, federal courts of appeals have held under similarly structured statutes that they do *not* create a federal right of action to enforce a preemption clause against private state court litigants, and that when a preemption clause applies to private litigation it should be raised as a defense in that litigation. *See NGS Am., Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000), *Denny's Inc. v. Cake*, 364 F.3d 521, 527 (4th Cir. 2004).

The District Court also correctly found that the AIA bars Appellant's claim for injunctive relief because the PSA does not expressly authorize a federal court to enjoin state court proceedings. *See* 28 U.S.C. 2283. The text of the PSA does not contain any such authorization, and Appellant fails to present any legislative history indicating a congressional concern with state court proceedings. Appellant's policy

arguments also fail, as there is no evidence that such an authorization would be necessary to give the PSA its intended scope. To the contrary, the text of the PSA itself indicates that it does not affect state court proceedings. *See* 49 U.S.C. § 60121(d). Further, since filing this lawsuit, Appellant has raised its affirmative preemption defenses in the underlying state court cases, underscoring that enjoining such proceedings would not be necessary to protect the federal interests Appellant asserts.

Finally, this Court could affirm the District Court's Order on the alternate ground that Appellant's Complaint is procedurally barred by the PSA itself. The PSA requires a private party to provide 60-days' notice of an alleged violation to federal regulators and the allegedly offending party before filing suit. *See* 49 U.S.C. § 60121(a)(1)(A). Appellant acknowledges in the Complaint that it failed to comply with this requirement. JA20–21 (Compl. ¶ 14). The Supreme Court holds that such statutory notice provisions are mandatory conditions-precedent to filing a lawsuit, and any complaint that fails to comply with a pre-suit notice condition must be dismissed. *Hallstrom v. Tillamook County*, 493 U.S. 20, 31, 33 (1989).

For all these reasons, the Court should affirm the District Court's Order below.

## STANDARD OF REVIEW

This Court reviews the denial of a preliminary injunction for abuse of discretion and reviews any underlying legal questions de novo. *ADP, LLC v. Rafferty*,

923 F.3d 113, 119 (3d Cir. 2019). The Court reviews issues of subject matter jurisdiction and statutory interpretation de novo. *Erie Ins. Exch. by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 818–19 (3d Cir. 2023). The Court has "an independent obligation" to determine whether subject matter jurisdiction exists, including standing, regardless of whether the issue was raised below. *Associated Builders & Contractors W. Penn.*, 81 F.4th at 287.

Where, as here, appellate jurisdiction is asserted on the basis that the underlying order is the equivalent to a dismissal on the merits, this Court has plenary review and "may affirm on any grounds supported by the record." *Hassan v. Gov't. of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017).

## ARGUMENT

### I.     Appellant's Lawsuit Fails to Confer Federal Subject Matter Jurisdiction.

This Court should affirm the District Court's Order because the District Court lacks subject matter jurisdiction over this case. Appellant's allegations in the Complaint fail to satisfy Article III's standing requirements. Alternatively, properly construing Appellant's allegations as an affirmative federal preemption defense to allegations in the state court litigation, this Court's precedents are clear that the availability of a federal defense is insufficient to confer federal subject matter jurisdiction.

### A.    The Complaint Is Constitutionally Barred for Lack of Article III Standing

"Under Article III, a case or controversy can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). Standing is thus "a part of the basic charter promulgated by the Framers of the Constitution at Philadelphia in 1787," and presents "an issue of subject matter jurisdiction that cannot be waived or forfeited." *Associated Builders & Contractors W. Penn.*, 81 F.4th at 287, 291 (internal quotations omitted).

"To establish Article III standing, a plaintiff bears the burden of showing three 'irreducible' elements." *Id.* (citing *Lujan*, 504 U.S. at 560). The plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Standing "is not dispensed in gross," rather it must be demonstrated independently "for each claim" and "for each form of relief" sought. *Id.* (internal citations omitted). To satisfy Article III at the pleading stage, a plaintiff must clearly allege facts demonstrating each element. *Spokeo*, 578 U.S. at 338.

### 1.    Appellant does not allege an injury-in-fact.

Appellant fails to allege a cognizable injury sufficient to establish Article III standing. To meet the standing requirements, an alleged injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual

or imminent, not conjectural or hypothetical." *Associated Builders*, 81 F.4th at 287.

The concreteness element requires that the injury be "real, and not abstract." *Id.*; *see also Spokeo*, 578 U.S. at 340. Imminency requires that the injury is "*certainly impending.*" *Lujan*, 504 U.S. at 564 n.2 (emphasis in original). A "substantial risk" that the harm will occur is sufficient in some cases, but only where plaintiffs reasonably incur costs to avoid that harm. *See Clapper*, 568 U.S. at 414 n.5; *Monsanto Co. v. Geertsen Seed Farms*, 561 U.S. 139, 154–55 (2010).

When an alleged injury is premised on a federal statutory violation, the mere presence of a federal question is insufficient to establish a constitutionally cognizable injury. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Rather, the creation of a statutory prohibition and a cause of action "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Id.*

Appellant does not allege a concrete or particularized harm. Appellant's general allegation that Appellees' claims for injunctive relief in the underlying state court litigation somehow violate the PSA or PHMSA's regulations is not particularized, because Appellant, as a private pipeline operator, is "not charged with pursuing the public interest in enforcing a defendant's general compliance with regulatory law." *Id.* at 429; *see* JA37 (Compl. ¶ 70). Appellant's only alleged particularized harm is that compliance with a hypothetical injunction order could

require Appellant to violate PHMSA's Consent Order. *See* JA31–32 (Compl. ¶¶ 51–52). This allegation is false. *Compare id.*, *with* District Court Docket, ECF 1-4 (Compl. Ex. D), at ¶¶ 9 (establishing that the Consent Order is not a permit and does not affect requirements to comply with any federal, state, or local law), 13 (imposing *minimum* pressure restrictions, and stating that Sunoco's monthly pressure restriction review must include a review of any additional reductions). But regardless, Appellant's allegation is impermissibly abstract—no court has issued an injunction in these cases, and in only one of the underlying cases has a motion for preliminary injunctive relief even been filed. Absent any order on injunctive relief in the state cases, the claim relies on "mere speculation" as to the implications of a hypothetical order, and thus fails to allege a concrete injury. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016).

Appellant also fails to allege an injury that is actual or imminent. In *Lujan*, the Supreme Court explained that pleading the likelihood of exposure to future injury, "without any description of concrete plans, or indeed even any specification of *when* the some day will be," cannot support a finding that the injury is "actual or imminent." 504 U.S. at 564. Appellant does not allege that an order enjoining its pipeline operations exists, or any potential timeline for one—indeed, Appellant's claim is entirely contingent on the actions of third-party state courts. Because

Appellant fails to allege any concrete, particularized, actual or imminent injury, it lacks standing under Article III.

For the same reasons, Appellant's lawsuit is constitutionally barred on ripeness grounds. *See National Shooting Sports Foundation v. Att'y General of New Jersey*, 80 F.4th 215, 219 (3d Cir. 2023) (most of the standing analysis applies equally to questions of ripeness); *see also Trump*, 592 U.S. 125 at 131 (standing and ripeness are "related doctrines of justiciability"). A claim is not ripe if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *National Shooting Sports Foundation*, 80 F.4th at 219 (quoting *Trump*, 592 U.S. at 131). Appellant's theory of injury, as stated, is entirely contingent on the future discretionary actions of third-party state courts. Accordingly, Appellant's lawsuit is not ripe for adjudication under Article III.

### 2. Appellant cannot establish causation.

Even if Appellant had alleged a cognizable injury, Article III requires that injury to be fairly traceable to Appellees' challenged actions "and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. The causation requirement "precludes speculative links" (where it is not sufficiently predictable how third parties will react) and "attenuated links" (where the offending action is too far removed from even predictable ripple effects). *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 383 (2024). The

Supreme Court has repeatedly held that a plaintiff cannot establish the causation element where its theory of standing hinges on speculation as to a separate court's future decision-making. *See, e.g.*, *Clapper*, 568 U.S. at 413 ("[R]espondents can only speculate as to whether that court will authorize such surveillance."); *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990) (theory of injury that relies on obtaining future habeas relief is speculative); *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974) (attempting to anticipate whether respondents will be subjected to the county magistrate and judge's allegedly discriminatory procedures "takes us into the area of speculation and conjecture").

Appellant's alleged injury is entirely contingent on the independent actions of third-party Pennsylvania state courts. Appellant's theory of the case is that an injunction issued *by a state court* that constrains Appellant's operation of the Pipeline would violate the PSA's preemption clause. Appellant does not allege that any *Appellee* is a "state authority" with the capacity to "adopt or continue in force safety standards" within the meaning of 49 U.S.C. § 60104(c). Rather, Appellants only argue that by asserting claims for injunctive relief in state court, Appellees could cause independent state actors to violate the PSA and thereby injure Appellant. But under Pennsylvania law, the exercise of equitable powers, including the power to issue injunctive relief, is entirely within the sound discretion of the state trial court and that discretion cannot be directed by any party in a lawsuit. *CKHS, Inc. v.*

*Prospect Medical Holdings, Inc.*, 329 A.3d 1204, 1217 (Pa. 2025). Further, under Pennsylvania law a court could preliminarily enjoin aspects of the Pipeline's operations even if the state plaintiffs only sought other forms of relief, because trial courts have discretion to tailor equitable relief to abate the harm alleged and to grant relief other than what is sought. *See Anchel v. Shea*, 762 A.2d 346, 355 (Pa. Super. Ct. 2000).

Appellant's alleged injury can *only* result from the independent, discretionary action of a third-party state court judge. Reliance on such a speculative link precludes a finding of traceability, because "it is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case." *Clapper*, 568 U.S. at 413–14 (quoting *Whitmore*, 495 U.S. at 159–60); *see also Doe v. Virginia Dept. of State Police*, 713 F.3d 745, 756–57 (4th Cir. 2013) (no traceability where state courts, rather than the named defendants, have discretion over whether the alleged harm occurs). Appellant thus fails to satisfy the second standing element as well. *See Lujan*, 504 U.S. at 560.

### 3.    Appellant cannot establish redressability.

When a claimant's theory of injury relies on independent actions of third parties, redressability becomes a problem as well. *See Alliance for Hippocratic Medicine*, 602 U.S. at 380 (observing that the causation and redressability elements "are often flip sides of the same coin"); *see also Lujan*, 504 U.S. at 569–71 (no

redressability where agencies at issue were not parties to the suit, and accordingly resolution by the district court would not have been binding on them).

Here, even if the District Court issued the relief Appellant seeks, such relief would not be binding on any state authority because no state authority is party to this lawsuit. *See Torres-Jurado v. Administrator of Bergen County Jail*, 767 Fed. App'x. 227, 232 (3d. Cir. 2019) (in seeking a prospective injunction, a plaintiff "is required to name an official or officials who can appropriately respond to injunctive relief") (quoting *Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016)). The declaratory and injunctive relief Appellant seeks would *at most* instruct the injured residents in state litigation that federal law, as interpreted by a separate judge not presiding over the litigation at issue, prohibits them from seeking a certain type of relief.

In other words, Appellant seeks an unconstitutional advisory opinion. *See Haaland*, 599 U.S. at 293 ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by res judicata. Without preclusive effect, a declaratory judgment is little more than an advisory opinion.") (internal quotation omitted); *see also Alliance for Hippocratic Medicine*, 602 U.S. at 378 ("Federal courts do not issue advisory opinions about the law.").

*Brackeen* is instructive here. In that case, the petitioners sought an injunction preventing federal parties from enforcing the Indian Child Welfare Act ("ICWA")

and a declaratory judgment that provisions of the Act were unconstitutional. But as the Supreme Court explained, ICWA is applied and enforced by state actors, and no state officials who implement ICWA were parties to the suit. *Brackeen*, 599 U.S. at 293. The petitioners argued that they could nevertheless satisfy redressability because state courts "are likely to defer to a federal court's interpretation of federal law." *Id*. Rejecting this argument, the Supreme Court explained that "redressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power . . . it is the judgment, not the opinion that demonstrates redressability." *Id*. at 294 (internal citations omitted, emphasis in original). While the petitioners were free to raise constitutional challenges in their underlying state court adoption proceedings, their separately filed federal litigation failed to satisfy Article III. *Id*. at 294 n.10.

Here, much like in *Brackeen*, Appellant seeks declaratory and injunctive relief to prevent possible future actions by state courts in ongoing state litigation but has not named those courts in this lawsuit. The future actions Appellant seeks to prevent are discretionary functions of state courts, and only an order binding those courts would effectively prevent the alleged injury from occurring. The relief sought here, however, would have no preclusive effect on those non-party courts in the underlying state litigation. *Brackeen* offers guiding precedent in such circumstances;

declaratory and injunctive relief would amount to no more than an advisory opinion and, Appellant therefore fails to satisfy the redressability element of standing. 599 U.S. at 292–94.

### B.    The District Court Lacks Subject Matter Jurisdiction over Appellants' Preemption Defense

Apart from Appellant's lack of Article III standing, the District Court correctly determined that it lacked subject matter jurisdiction because Appellant had merely "reframe[d] a preemption defense as a freestanding request for federal injunctive relief." JA 5. Such a determination is not only correct, but also logical, as Appellant's claim as pleaded can *only* exist in the context of the underlying state court litigation. The Complaint itself alleges that the "real and actual controversy" between Appellant and Appellees arises from Appellees' "attempts to invoke the authority of the state courts"—that is, Appellees' prayers for equitable relief in the state court complaints. JA37 (Compl. ¶ 70).

Appellant's insurmountable problem is that, when understood as an affirmative defense to Appellees' state court claims, Appellant's allegations fail to establish federal subject matter jurisdiction. "Binding precedent instructs that, 'when a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court.'" *Metro. Edison Co.,* 767 F.3d at 364 (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 149–50 (1988); *see also* JA5. An affirmative defense of federal preemption, "even if the defense is

anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," is not sufficient to confer federal subject matter jurisdiction over the matter. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Appellant argues that the PSA somehow creates a private right of action to enjoin federally preempted actions through separate litigation, but this theory is not supported by the text of the statute. Section 60104(c), the "preemption" provision, does ***not*** contain any language indicating that it creates a federal cause of action. 49 U.S.C. § 60104(c). Section 60122, which provides civil penalties for administrative enforcement actions, identifies specific sections of the PSA for which enforcement is contemplated: sections 60103, 60111, 60112, 60114(a)–(b), 60118, and 60129. *See* 49 U.S.C. § 60122(a), (f). Importantly, each of these sections concern standards that apply to pipeline *operators*. Section 60104, which creates the PSA's cooperative federalism framework, is notably absent from the civil penalties provision. Section 60120, which provides for civil enforcement actions, states that section 60122's factors must be considered in fashioning relief but that its limits as to maximum penalties do not apply to a civil enforcement action.

The PSA's citizen suit provision, section 60121, specifically references government enforcement actions and states that (1) a person considering a private suit for violation of the PSA must give the Secretary of Transportation 60-days-

notice before filing the suit,[5] and (2) that any government enforcement action for the same violation precludes a private suit under the PSA. 49 U.S.C. § 60121(a)(1). The section also provides that it "does not restrict a right to relief that a person or a class of persons may have under another law or at common law." 49 U.S.C. § 60121(d).

Appellant reads section 60121's creation of a private right of action for "a violation of this chapter or a regulation prescribed or order issued under this chapter" so broadly as to construe anything that would contradict any term of the statute as a *violation* giving rise to a statutory right of action. *See* 49 U.S.C. § 60121(a)(1). But no regulation or order could be prescribed or issued under the preemption provision, and the preemption provision is different in kind from the provisions concerning standards and operating procedures for which Congress specifically provided enforcement mechanisms and civil penalties. The canons of *noscitur a sociis* and *ejusdem generis* thus suggest that "a violation of this chapter" in section 60121 should not be interpreted so broadly as to create a private cause of action to enforce the preemption provision. *See Fischer v. United States*, 603 U.S. 480, 487–89 (2024).

Appellant's interpretation also conflicts with section 60121's broad savings clause, which states that a citizen suit action "does not restrict" any rights to relief that a person may have at common law. 49 U.S.C. § 60121(d). The savings clause

---

[5] Appellant did not comply with this requirement. *See* JA36 (Compl. ¶ 68). As discussed *infra*, that failure is itself a violation of the statute and independently mandates dismissal here.

plainly permits lawsuits to pursue tort remedies in state court, like the ones Appellees pursue in the underlying state cases, notwithstanding that the injuries alleged may arise from the operation of interstate pipelines. Appellant's interpretation of section 60121(a) would contradict section 60121(d)'s express limitation on the scope of a private right of action. The "background interpretative rules" applicable to the Court's interpretation of the PSA's citizen suit provision thus counsel against finding a private right of action to enforce the PSA's preemption clause. *See Lewis v. Acuity Real Estate Servs., LLC*, 63 F.4th 1114, 1118 (6th Cir. 2023) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)).

The Sixth Circuit's analysis in *NGS Am., Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000), is instructive. In *Jefferson*, after receiving a notice of intent to initiate litigation in state court from the defendant as required under Florida law, the plaintiff brought suit in federal court seeking injunctive relief to prevent prosecution of the state case and a declaration that the federal Employee Retirement Income Security Act ("ERISA") preempted any state court claims. The Sixth Circuit, reviewing the district court's order dismissing the case for lack of federal jurisdiction, noted first that "federal courts frown upon declaratory judgment actions brought for procedural fencing purposes." *Id*. at 522 (collecting cases). "In essence," the Sixth Circuit noted, "NGS seeks a federal forum for determination of the ERISA preemption issue in the underlying state-court case . . . a rule permitting the action could frustrate a plaintiff's

choice of forum and encourage forum shopping, races to the courthouse, needless litigation occasioning waste of judicial resources, delay in the resolution of controversies, and misuse of judicial process to harass an opponent in litigation." *Id*. at 522–23.

The Sixth Circuit rejected the plaintiff's arguments that Congress permitted such effects by providing for injunctive and declaratory relief in ERISA. The court concluded that, to the contrary, Congress would have clearly stated if its provisions for relief were intended to interfere with state court litigation, as this interpretation "raises further questions about the scope of the Anti-Injunction Act and abstention under *Younger* and its progeny." *Id*. at 523 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). The court specifically noted that it "[did] not read ERISA's authorization of injunctive relief as expressly authorizing injunctions of state court proceedings" for purposes of avoiding the AIA. *Id.* at 523 n. 4.

The Sixth Circuit also rejected the plaintiff's argument that the suit was necessary to enforce ERISA's preemption clause, because "not even complete preemption entails a right not to be sued in state court." *Id*. at 527. The Sixth Circuit then analyzed ERISA's preemption provision, and held that the provision "does not create a federal cause of action itself," contrasting it with other provisions that "lend themselves to ready enforcement by injunction or declaratory action." *Id*. at 529. The court held, as the District Court held here, that preemption is a defense to be raised

in state court rather than a basis for federal jurisdiction, and that state courts are competent to decide whether the statute preempts a state claim. *Id*. at 530. Thus, notwithstanding the fact that ERISA contains a preemption provision and provides for a federal cause of action to enforce its provisions, the Sixth Circuit held that enforcement of the *preemption* provision is insufficient to confer federal subject matter jurisdiction. *Id*.

The *Jefferson* court's analysis applies equally to the Appellant's PSA claim. Like ERISA, the PSA's preemption provision itself does not indicate any intent to create a private right of action. Also, like ERISA, the PSA indicates specific provisions that lend themselves to ready enforcement, and limits the availability of civil penalties for administrative enforcement actions to those provisions that pertain to the operations of pipelines. *See* 49 U.S.C. § 60122. The procedural requirement that a citizen suit under the PSA may commence *only* if no governmental enforcement action is being pursued indicates that citizen suits are meant to supplement, not supplant, the relief that the government itself could seek. *See Askins v. Ohio Dep't of Ag.*, 809 F.3d 868, 875 (6th Cir. 2016). Thus, as the *Jefferson* court found regarding ERISA, this Court should find that the PSA's citizen suit provision does not create a private right of action to enforce its preemption clause. The District Court's conclusion that PSA preemption issues are properly raised as an affirmative

defense in the litigation where they arise, rather than as standalone causes of action, should be affirmed.

Neither of the cases Appellant relies on lend support to its interpretation. The Fourth Circuit in *Denny's, Inc. v. Cake* goes out of its way to state its *agreement* with *Jefferson*, and articulates why Appellant's reliance on the case is misguided:

> [W]e agree with the Sixth Circuit: an action based on ERISA preemption brought by a fiduciary *to enjoin a private suit* critically differs from such an action brought by a fiduciary to *prevent the enforcement of a state law against an ERISA plan.* A party's private suit, based on an arguably preempted state law . . . poses no threat to violate § 1144 or any other provision of ERISA or the plan . . . But a state suit to enforce a state law against an ERISA plan may well violate ERISA and the plan. In such a case, the plan's fiduciary faces a Hobson's choice: obey the state law, and risk violating the provisions of the plan [] or disobey the state law and then raise "ERISA preemption as a defense in a state enforcement action" and "risk[ ] breaking the law."

364 F.3d 521, 527 (4th Cir. 2004) (emphasis in original). In *Denny's*, the California state commissioner had notified the company that its practices violated state labor law and then initiated an enforcement action, creating the "Hobson's choice." *See id*. at 523.

Here, like in *Jefferson* and unlike in *Denny's*, Appellant seeks to "enjoin a private suit" based on a preemption argument that could have been raised in state court. *Id*.; *see also Jefferson*, 218 F.3d at 529–30. Appellant does not name any state official or seek enjoinment of any enforcement action. Thus, the Fourth Circuit and

Sixth Circuit appear to agree that suits like Appellant's lack federal subject matter jurisdiction.

*Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872 (9th Cir. 2006), is inapposite. That case, like *Denny's*, sought to enjoin enforcement activities by local regulators, and the Ninth Circuit stated that it would have reached a different result but for the city's decision to act in its regulatory capacity. *Id*. at 881. Regardless, the plaintiff in *Olympic* asserted at least four additional bases for federal subject matter jurisdiction apart from its PSA claim, *Olympic Pipe Line Co. v. City of Seattle*, No. 2:03-cv-2343, Dkt. No. 1 (W.D. Wash.), and the issue of subject matter jurisdiction was not appealed to or addressed by the Ninth Circuit.

A finding of federal subject matter jurisdiction for a freestanding preemption defense under the circumstances of this case would contradict the meaning and purpose of the PSA's citizen suit provision, including its savings clause. Such a finding would further present serious policy concerns and would give rise to questions about abstention and comity. *See Jefferson*, 218 F.3d at 523, 529. This Court's own precedents further counsel against such a finding. *See Metro. Edison Co.*, 767 F.3d at 364. The Court should affirm the District Court's determination that Appellant's preemption defense is better left for resolution by the state courts (where it has since been raised by Appellant and its co-defendants), and that as a freestanding claim it fails to confer federal subject matter jurisdiction.

Notably, Appellant does not cite to a single instance in which a federal court found it had jurisdiction to consider a freestanding lawsuit asserting only that ongoing litigation between private parties in state court was federally preempted—and certainly not one under the PSA. Nor are Appellees aware of any such case. Inevitably, such a decision would open the floodgates to a wave of lawsuits in federal court by state court defendants who wish to present affirmative preemption defenses to judges other than the ones presiding over their state litigation, even in cases that are not removable.

## II.    The Anti-Injunction Act Bars Appellant's Request for Injunctive Relief.

Appellant filed this lawsuit with the express goal of interfering with state court litigation. *See* JA37 (Compl. ¶ 69) (SPLP seeks injunctive relief to prevent Residents "from imposing or enforcing safety standards on SPLP's Pipeline, ***through litigation in state court***") (emphasis added). Pursuant to the AIA, however, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The AIA "goes back almost to the beginnings of our history as a Nation," with the consistent basic purpose of preventing "needless friction between state and federal courts." *Mitchum v. Foster*, 407 U.S. 225, 231–32 (1972). The statute's prohibition on enjoining state court proceedings flows from Congress's continued

"confidence in state courts" to adequately protect and vindicate federal rights. *Amalgamated Clothing Workers of America v. Richman Bros.*, 348 U.S. 511, 518–19 (1955). The exceptions to the AIA's prohibition are thus construed strictly and narrowly, and a federal court "does not have inherent power to ignore the limitations of [§ 2283] and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 294 (1970).

The District Court correctly held that because none of the statutory exceptions apply to this case, the AIA prohibited the District Court from granting Appellant's TRO Motion. JA4–5; *see also* 28 U.S.C. § 2283. Appellant disputes the District Court's holding only as to the express authorization exception—but then proceeds to argue that the "express" authorization required is implied from the statute's context and purpose. *See* Br. at 19–25. Whether express or implied, however, nothing in the PSA indicates Congressional intent to authorize stays of proceedings in state courts. If this Court proceeds to review application of the AIA to Appellant's TRO Motion, it should affirm.

## A. The PSA Does Not Expressly Authorize Injunctions of State Court Proceedings

It is undisputed that Congress did not refer explicitly to the AIA or the proceedings of state courts in any provision of the PSA. Appellant argues, however,

that a reference to state court proceedings is contained within the text of the citizen suit provision, that:

> A person may bring a civil action in an appropriate district court of the United States for an injunction against another person (including the United States Government and other governmental authorities to the extent permitted under the 11th amendment to the Constitution) for a violation of this chapter or a regulation prescribed or order issued under this chapter.

49 U.S.C. § 60121(a)(1). Appellant argues that the reference to governmental authorities—and specifically those to whom the Eleventh Amendment applies—indicates Congressional intent to authorize the enjoinment of state court proceedings. Br. at 22. This argument fails for at least two reasons.

First, the reference to government authorities is a descriptor of whom an action may be brought *against*. The question of whether "other governmental authorities to the extent permitted under the 11th amendment" includes state courts is not before this Court, because Appellant did not "bring a civil action . . . for an injunction against" any state court. *See* 49 U.S.C. § 60121(a)(1). Appellant's entire argument that section 60121 contemplates suits against state courts is at most a red herring, because whether that interpretation is correct or not says nothing about whether the section authorizes suing *private citizens* to enjoin *private litigation* in state court. In other words, the focus of section 60121 is on the *actors* who may be enjoined, not on the permissible scope of an injunction. In this case, Appellant seeks an injunction that would target the state court proceedings themselves, without even

33

naming the state courts as parties. The AIA reflects more than 200 years of consistent Congressional intent to prevent such injunctions. Congress's grant of authority to sue state officials for certain PSA violations says nothing about whether Congress intended to create an exception to the AIA's prohibition in such cases and, accordingly, should not be interpreted as doing so. *See Atl. Coast Line*, 398 U.S. at 294–95 (AIA exceptions are construed strictly and narrowly).

Second, Appellant's reliance on the interpretive canon *expressio unius est exclusio alterius* (Br. at 22) fails because Congress states that any statutory exception to the AIA must be "expressly authorized." 28 U.S.C. § 2283. The AIA serves a related function to the Eleventh Amendment: "Due in no small part to the fundamental constitutional independence of the States, Congress adopted a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court.'" *Chick Kam Choo*, 486 U.S. at 146 (quoting *Atl. Coast Line*, 398 U.S. at 287). Like the Eleventh Amendment, the AIA applies regardless of whether Congress mentions it.[6] The

---

[6] Appellant's suggestion that reference to the Eleventh Amendment only serves to signal an absence of other restrictions is incorrect. *See* Br. at 22. Section 60121 on its face contemplates suits against state entities in federal court, which naturally gives rise to questions about state sovereign immunity. By explicitly stating that the provision does not apply to any suit that the Eleventh Amendment would prohibit, Congress protected the citizen suit provision from easily anticipated constitutional challenges, such as suits against States themselves or state executive branch

Court should not apply an interpretive canon to find implied what Congress has stated must be expressed. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 631 (1977) ("[T]he prohibition is not to be whittled away by judicial improvisation.") (quoting *Amalgamated Clothing Workers*, 348 U.S. at 514).

### B.    The PSA Does Not Satisfy the *Mitchum* Test for Express Authorization

In *Mitchum*, the Supreme Court held that a federal statute which does not contain an explicit reference to the AIA or to injunctions of state court proceedings may nonetheless satisfy the AIA's express authorization exception, but only if the statute, "clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope *only* by the stay of a state court proceeding." 407 U.S. at 238 (emphasis added). In *Mitchum*, the Supreme Court applied this test to section 1983 and, based on the legislative history, determined that "the very purpose" of the civil rights law "was to interpose the federal courts between the States and the people," and that its proponents specifically intended to "remedy the state courts' failure to secure federal rights." *Id*. at 241–42. The Court thus held that section 1983 falls within the expressly authorized exception to the AIA. *Id*. at 243.

Just five years later, the Supreme Court explained in a split decision that its outcome in *Mitchum* depended on clear congressional concerns that "state courts

---

agencies. That drafting choice does not give rise to an inference about which other limitations may apply, such as the AIA.

. . . might be used as an instrument to deny citizens their rights under the Federal Constitution," and based on such specific legislative history, it was necessary to "cure" the absence of any express language authorizing enjoining state court proceedings. *Vendo Co.*, 433 U.S. 633–34. The lead opinion thus concluded that regardless of the importance of the federal interests at play, the *Mitchum* test is only satisfied by statutes that "necessarily interact with, or focus upon, a state judicial proceeding." *Id.* at 640–41.[7]

### 1. Stays of State Court Proceedings Are Not Necessary to Give the PSA its Intended Scope

Appellees agree that the PSA's enforcement provisions are sufficient to satisfy the first prong of the *Mitchum* analysis. *See* 49 U.S.C. § 60121(a)(1); *see also Vendo Co.*, 433 U.S. at 632 (private right of action in the Clayton Act satisfies the first *Mitchum* requirement because actions based upon it "may be brought only in the federal courts"); *Southern Cal. Gas Co. v. Cnty of Los Angeles, Cal.*, No. 17-cv-5140, 2017 WL 8793753, at *4 (C.D. Cal. Dec. 4, 2017) (finding the PSA satisfies *Mitchum*'s first prong based on its creation of public and private enforcement

---

[7] A majority of the Court in *Vendo Co.* would have held that there may be circumstances in which the Clayton Act meets the AIA's express authorization exception as described by the plurality. *See 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 409–10 (3d Cir. 1992) (discussing *Vendo Co.*).

mechanisms). But the federal right or remedy created by the PSA does not depend on a federal court's capacity to enjoin state court proceedings.

The purpose of the PSA is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102(a)(1). The statute attempts to achieve this purpose by requiring the Secretary to prescribe *minimum* safety standards. 49 U.S.C. § 60102(a)(2). Nothing in the text of the statute indicates Congressional intent to interfere with private litigation in state courts.

To the contrary, the plain text of the PSA provides that it does not restrict state court litigation for injuries arising from the operation of interstate pipeline facilities. *See* 49 U.S.C. § 60120(c) ("This chapter does not affect the tort liability of any person."); 60121(d) ("This section does not restrict a right to relief that a person or a class of persons may have under another law or at common law."). Every federal and state court that has considered the question has concluded that common law tort remedies are not preempted. *See, e.g.*, *Davis v. Sunoco Pipeline Ltd. P'ship*, No. 346729, 2020 WL 3397386, at *3–4 (Mich. Ct. App. June 18, 2020) (no preemption of state nuisance claims based on local ordinances that only incidentally affect safety); *Cheverez v. Plains All Am. Pipeline, LP*, No. 15-cv-4113, 2016 WL 4771883, at *5–6 (C.D. Cal. Mar. 4, 2016) (no preemption of injunctive relief under state tort

law to require that pipeline operate safely following rupture); *Penn. Servs. Corp. v. Texas Eastern Transmission, LP*, No. 2:11-cv-1076, 2011 WL 13234909, at *1 (W.D. Pa. Oct. 12, 2011) (finding Congress did not intend for PSA to preempt Pennsylvania property or tort law and remanding to state court). Further, the federal courts of appeals all agree that the PSA does not preempt safety *considerations* by state authorities or rules that incidentally affect safety, as opposed to safety *regulations*. *See Couser v. Shelby Cnty, Iowa*, 139 F.4th 664, 671 (8th Cir. 2025); *Washington Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421–22 (4th Cir. 2013); *Texas Midstream Gas Servs., LLC v. City of Grand Prairie*, 608 F.3d 200, 211 (5th Cir. 2010). The Supreme Court has also concluded, for a statute containing similar express preemption and savings clause provisions, that a savings clause like the PSA's demonstrates Congress's intent that minimum federal safety standards be "supplemented through state tort law." *Williamson v. Mazda Motor of America, Inc.*, 562 U.S. 323, 335 (2011).

Appellant concedes, as it must, that the PSA's savings clause indicates congressional approval of state court litigation for tort claims against interstate pipeline operators. Br. at 40. Appellant then asserts, without basis, that the savings clause must be limited to claims for damages. *Id*. But the PSA, on its face, "does not affect the tort liability of any person." *See* 49 U.S.C. § 60120(c), *see also* § 60121(d) (PSA remedies are "in addition to any other remedies provided by law"

and PSA does not restrict any "right to relief" that a person "may have under another law or at common law"). And in Pennsylvania, tort liability may include equitable relief. *See, e.g.*, *Vautar v. First National Bank of Pennsylvania*, 133 A.3d 6, 12–13 (Pa. Super. Ct. 2016); *Hatfield Township v. Lexon Ins. Co.*, 15 A.3d 547, 552 (Pa. Commw. Ct. 2011). The text of the PSA thus supports the inference that Congress anticipated, and chose *not* to preempt, the pursuit of injunctive relief in state litigation against interstate pipeline operators.

The legislative history of the PSA's savings clause also demonstrates that Congress intended the clause, as designed in the PSA's predecessor statutes, to preserve *all* applicable tort principles and remedies. As originally included in the Natural Gas Pipeline Safety Act of 1968, the savings clause was "designed to assure that the tort liability of any person existing under common law or any statute will not be relieved by reason of the enactment of this legislation or compliance with its provisions." H.R. Rep. No. 90-1390 (May 15, 1968). When the statute was amended in 1976, Congress explained that amendments were "not intended to impact existing tort principles relating to the liability of a pipeline owner or operator," and that the purpose of the newly introduced citizen suit provision was to "protect the public health and safety." H.R. Conf. Rep. 94-1660 (Sept. 22, 1976).

There is simply no textual or historical evidence to support Appellant's argument that state court *proceedings* concerning state tort claims conflict with the

purpose of the PSA. "State courts are competent to determine whether state law has been preempted by federal law . . . they must be permitted to perform that function with regard to state law claims brought before them." *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306, 316 (3d Cir. 1994) (internal quotations omitted). Indeed, fatal to Appellant's argument is the fact that Appellant, along with its state court co-defendants, has now submitted in every state court litigation at issue briefing raising the same federal preemption argument under section 60104(c) that it presented to the District Court. *See, e.g.*, District Court Docket, ECF 20-1 (Memorandum in Support of Motion to Dismiss and for Sanctions), at 4 n.2 (noting that Appellant raised its identical preemption defense to the preliminary injunction motion in state court just three days after filing this lawsuit). The procedural posture of the underlying state cases demonstrates that enjoining state court proceedings is not necessary to achieve the PSA's intended scope, including the scope of its preemption clause. The PSA accordingly does not meet the requirements for an express authorization exception to the AIA under *Mitchum*.

Additionally, the Court should disregard Appellant's argument that because it sued under a citizen-suit provision, it should automatically enjoy the same exceptions to the AIA that the federal government enjoys in enforcement actions pursuant to *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 226 (1957). *First*, for the reasons stated above, the Attorney General could *not* bring this case because

the statute does not provide for standalone enforcement actions of the express preemption provision. *Second*, the animating principles underlying *Leiter* and its progeny are not present here. *Leiter* involved a case where lessees of the government's mineral rights had been sued for title in state court and the government sought to intervene, and "[c]entral to the [Supreme Court's] decision was that only a federal court could determine the title of the United States to the mineral rights." *In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 274 (5th Cir. 2001). Subsequent extensions of the *Leiter* doctrine necessarily involved instances "in which the federal government was found more justified in seeking a federal forum than a private litigant." *Id*. (quoting *United States v. Commonwealth of Penn., Dep't of Envtl. Res.*, 923 F.2d 1071, 1078 (3d Cir. 1991)). *Third*, Appellant's reliance on *Studebaker Corp. v. Gittlin*, 360 F.2d 692 (2d Cir. 1966), as authority for extending *Leiter* to private litigants, is misplaced. *See* Br. at 34-35. This Court has explained that *Gittlin*, which predates *Mitchum*, goes no further than the *Mitchum* test itself, because *Gittlin* relied on a finding that enjoining the state court proceedings was *necessary* to prevent an ongoing violation of the Securities Exchange Act and thus the express authorization exception was satisfied. *Jennings v. Boenning & Co.*, 482 F.2d 1128, 1130–31 (3d

Cir. 1973). As this Court recognized in *Jennings*, the *Leiter* doctrine as applied to private litigants is incorporated in the *Mitchum* test.[8]

### 2.    There Is No Evidence that the PSA Focuses on State Judicial Proceedings

No evidence exists within the legislative history of the PSA or its predecessor statutes to support a finding that Congress was concerned with proceedings in state courts. This Court, citing the lead opinion from *Vendo Co.*, holds such legislative history is necessary to overcome the lack of an explicit textual authorization to enjoin state courts. *U.S. Steel Corp. Plan for Employee Ins. Benefits v. Musisko*, 885 F.2d 1170, 1177 (3d Cir. 1989) ("The lack of a specific reference [to the use of injunctions against state tribunals] is not determinative, but in such absence the legislative history must contain adequate proof that 'Congress recognized and intended the statute to authorize injunction of state-court proceedings.'") (quoting *Vendo Co.*, 433 U.S. at 633).

Appellant does not provide the Court with *any* direct evidence of legislative history, much less any legislative history pertaining to Congress's view of the role of state *courts* in litigation concerning interstate pipelines. Appellant relies instead

---

[8] To the extent Appellant seeks any broader application of the *Leiter* doctrine, it finds no post-*Mitchum* support for such an argument. Appellant's application of *Gittlin* would effectively create a rule that the AIA does not apply to statutes containing citizen suit provisions—a vast judicial expansion of the exceptions to the AIA that would contravene decades of Supreme Court precedent.

on two appellate decisions reviewing the legislative history of predecessor statutes to the PSA, neither of which considered the applicability of the AIA. In *Tenneco Inc. v. Public Serv. Comm'n of West Virginia*, the Fourth Circuit held that "[p]reemption of all phases of interstate gas pipeline safety *cannot be inferred from the fact that Congress has occupied a part of the field*." 489 F.2d 334, 337 (4th Cir. 1973) (emphasis added). The Fourth Circuit, reviewing the legislative history, found nothing to indicate that Congress intended to preempt states from imposing licensing fees against interstate pipelines, and concluded that the state fee at issue was valid. *Id*. at 338.

In *ANR Pipeline Co. v. Iowa State Commerce Comm'n*, the Eighth Circuit considered whether an Iowa statute designed to regulate pipeline operations was preempted as applied to an interstate gas pipeline. 828 F.2d 465, 466 (8th Cir. 1987). The Eighth Circuit, reviewing the legislative history of the predecessor statute's preemption provision, concluded that the statute "leaves nothing to the states in terms of substantive safety regulation of interstate pipelines," but that "this does not mean that the states are precluded under federal law from any role in enforcement with respect to the safety of interstate facilities." *Id*. at 470. The Eighth Circuit held that the portions of the statute which imposed safety regulations on pipeline operators were invalid with respect to interstate pipelines, but that Iowa could nevertheless enact environmental regulations and provide for damage remedies

43

applicable to interstate pipelines because such regulations and remedies likely fall outside Congress's intended preemption of "safety" regulation. *Id*. at 473–74.

In sum, neither *Tenneco* nor *ANR Pipeline* discussed or analyzed whether the PSA or its predecessors authorizes injunctions of *state court proceedings*, and none of the legislative history cited in either case discussed the roles of state courts. If anything, as other courts have recognized, "the legislative history of the PSA and its precursor statutes encourage federal-state cooperation." *Southern Cal. Gas*, 2017 WL 8793753, at *5 (citing *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1065 (9th Cir. 1987)). As this Court has held, the "fact that the state proceeding presents a preemption issue does not alter the respect due the state tribunal," and the absence of legislative history indicating that the preemption provision should apply to state tribunals is dispositive. *Musisko*, 885 F.2d 1177–78; *see also Employers Resource Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995) ("Recognizing the preemption of state law and respecting the dictates of the Anti-Injunction Act are not mutually exclusive.").

Appellant accuses Appellees of initiating "a bevy of suits in state court." Br. at 39. But Appellant does not argue that this "bevy" was improper, or that the causes of action in the suits violate the PSA, or that the number of suits suggests a violation—Appellant's sole concern is that the suits are in state, rather than federal,

court.[9] The concern might make sense, if there was evidence that Congress was concerned by the use of state courts to impede the federal government's capacity to regulate pipeline safety. *Cf. State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 95–96 (2d Cir. 2024) (injunction of hundreds of pending state court proceedings was expressly authorized under RICO, where the legislative history reflects that, like with section 1983, Congress in drafting RICO was specifically concerned by the possible involvement or use of state courts in organized crime). But not only does Appellant lack such evidence, the statute indicates the opposite—the PSA creates a framework for cooperative federalism, in which state authorities play roles in setting safety standards for intrastate pipelines and have exclusive authority over all pipeline location and routing decisions, and in which state tort liability may apply to pipeline operators regardless of whether federally imposed minimum safety standards have been violated. *See* 49 U.S.C. §§ 60104, 60120, 60121.

Lacking evidence of Congressional intent to authorize injunctions of state tribunals, Appellant turns to a policy argument that application of the AIA here

---

[9] The mere fact that multiple residents are suing Appellant in the aftermath of Appellant's release of jet fuel over a long period of time into their properties and private wells, their primary source of drinking, bathing, and cooking water, is irrelevant to whether the claims in those lawsuits violate the PSA. Importantly, Appellant has publicly acknowledged its responsibility for the Pipeline leak, and did not even seek dismissal of certain of the claims by plaintiffs in the individual cases. *See* JA 23 (Compl. ¶ 7).

would result in "a substantial gap in the PSA's enforcement scheme . . . resulting in a nationwide patchwork of safety standards for interstate pipelines." Br. at 40. Never mind that Appellant cannot point to a single federal court in any jurisdiction to have enjoined private state court proceedings after finding that the proceedings themselves violated the PSA. And never mind that the PSA contemplates a "patchwork" of safety standards, with states able to apply their own standards for intrastate pipelines and with the federal minimum standards for interstate pipelines dependent on conditions that vary greatly between pipelines and locations. *See, e.g.*, 49 U.S.C. §§ 60104, 60109, 60112, 60114, 60139. Even if Appellant's policy arguments had any basis, they are irrelevant to the inquiry at hand. "[T]he courts will not sit to balance and weigh the importance of various federal policies in seeking to determine which are sufficiently important to override historical concepts of federalism underlying [the AIA]; by the statutory scheme it has enacted, Congress has clearly reserved this judgment unto itself." *Vendo Co.*, 433 U.S. at 639.

Finally, to the extent the Court has any doubt as to whether the PSA expressly authorizes injunctions of state court proceedings to enforce its preemption clause, such doubt must be resolved "in favor of permitting the state courts to proceed." *Atl. Coast Line*, 398 U.S. at 297.

46

### III.    The PSA Itself Mandates Dismissal of Appellant's Case.

The District Court did not consider the merits of Appellant's PSA claim because it found that the AIA barred Appellant's request for a temporary restraining order and preliminary injunctive relief and that it lacks jurisdiction to consider a preemption defense to claims being litigated in state court. But this Court can affirm the District Court on the alternate ground that the PSA itself bars Appellant's Complaint on its face. *See Hassen*, 861 F.3d at 114.

The PSA's citizen suit provision, which supplies Appellant's sole cause of action, contains a mandatory pre-suit notice requirement:

> (1)    A person may bring a civil action in an appropriate district court of the United States for an injunction against another person . . . for a violation of this chapter or a regulation prescribed or order issued under this chapter. However, the person—
>
> > (A)    may bring the action **only after 60 days after the person has given notice of the violation to the Secretary of Transportation** or to the appropriate State authority . . . and to the person alleged to have committed the violation . . .
> >
> > (B)    may not bring the action if the Secretary or authority has begun and is diligently pursuing an administrative proceeding for the violation . . .

49 U.S.C. § 60121(a)(1) (emphasis added). Appellant affirmatively alleges that: (1) it had notice of the alleged "violation" of the PSA (Appellees' lawsuits and prayers for injunctive relief) since at least March 27, 2025 (JA26); (2) it has been in regular communication with PHMSA regarding the Pipeline release for the entire duration

of Appellees' state court lawsuits (JA23); and (3) it notified PHMSA of the purported "violation" for the first time on July 18, 2025, the same day this lawsuit was filed (JA20, JA36). In defense of its blatant failure to abide by the PSA, SPLP alleges only that "under the circumstances of this matter, § 60121(a)(1)(A) does not require that SPLP wait 60 days from the sending of this letter before commencing suit," without describing the circumstances that purportedly justify ignoring the statute's plain text. JA20–21. The Court "need not accept 'bald assertions' or 'legal conclusions' contained in the complaint." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The PSA's notice and 60-day delay requirements are "mandatory conditions precedent to commencing suit," and any action that fails to comply with them must be dismissed. *See Hallstrom*, 493 U.S. at 31.

In *Hallstrom*, the Supreme Court considered whether an identical 60-day notice provision in the Resource Conservation and Recovery Act ("RCRA") required dismissal of a suit that failed to comply with the requirement, and observed that its holding would apply to a number of statutes including specifically the identical notice provision in the PSA's precursor statute. *Id*. at 23 & n.1. *Hallstrom* held the language of this provision "could not be clearer . . . compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit." *Id*. at 26. Accordingly, failure to comply with the requirement may not be remedied by

imposition of a 60-day stay or opportunity to cure, because the procedural default is "caused by petitioners' failure to take the minimal steps necessary to preserve their claims." *Id.* at 27. The Court concluded that whether the provision is jurisdictional or procedural is irrelevant—where a party suing under a citizen suit provision fails to meet notice and 60-day delay requirements, "*the district court must dismiss the action as barred by the terms of the statute.*" *Id.* at 31, 33 (emphasis added).

Congress did not intend for the PSA to be used as a procedural sword, for pipeline operators to manipulate for litigation advantages. Appellant's lawsuit violates the PSA in text and spirit, and accordingly fails to state a claim under the statute. This Court should affirm the District Court's Order on this independent basis as well.

## CONCLUSION

The District Court's Order should be affirmed for the reasons stated herein.

Dated: December 12, 2025              Respectfully submitted,

                                      */s/ Shanon J. Carson*
                                      Shanon J. Carson (Bar No. 85957)
                                      Y. Michael Twersky (Bar No. 312411)
                                      Joseph E. Samuel, Jr. (Bar No. 327645)
                                      **BERGER MONTAGUE PC**
                                      1818 Market Street, Suite 3600
                                      Philadelphia, PA 19103
                                      Telephone: (215) 875-4656
                                      scarson@bergermontague.com
                                      mitwersky@bergermontague.com
                                      jsamuel@bergermontague.com

49

Jordan C. Hughes
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Site 205
Minneapolis, MN 55413
Telephone: (763) 340-0285
jhughes@bergermontague.com

*Counsel for Appellees*

## COMBINED CERTIFICATES OF COMPLIANCE

I hereby certify as follows:

1.     Pursuant to this Court's Local Appellate Rules 28.3(d) and 46.1(e), as the signatory of the foregoing Document, I am admitted and a member in good standing at the Bar of this Court.

2.     This Document complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f), it contains fewer than 13,000 words (specifically, it contains 12,037 words), as counted using the word-count function on the Microsoft Word software.

3.     This Document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word with 14-point Times New Roman font.

4.     The text of the electronic Document is identical to the text in any paper copies.

5.     A virus detection program has been run on the file, and no virus was detected. The virus detection program used is Microsoft Defender Antivirus.

Dated: December 12, 2025                    */s/ Shanon J. Carson*
                                            Shanon J. Carson

## <u>CERTIFICATE OF SERVICE</u>

I, Shanon J. Carson, Counsel for Appellees, certify that, on December 12, 2025, I electronically filed the foregoing Brief of Appellees to this Court with the Clerk of the Court for the United States Court of Appeals for the Third Circuit via this Court's CM/ECF system.

I further certify that the foregoing Document was served electronically upon each of the following registered users by filing it via the Court's CM/ECF system:

Diana Amaral Silva
Robert D. Fox
Laura Hughes McNally
Duke K. McCall III
Randall M. Levine
Cassidy Duckett Britt

*Counsel for Appellant Sunoco Pipeline L.P.,*

Dated: December 12, 2025                         */s/ Shanon J. Carson*
                                                                    Shanon J. Carson