## No. 25-2551

# In the United States Court of Appeals

FOR THE THIRD CIRCUIT

SUNOCO PIPELINE LP,

*Plaintiff-Appellant*

v.

DANIEL LA HART,
individually and on behalf of a class of others similarly situated,

*Defendant-Appellee*

(Additional Parties on Inside Cover.)

Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 25-cv-3694, Hon. Mia Roberts Perez

## REPLY BRIEF OF APPELLANT

DUKE K. MCCALL III
RANDALL M. LEVINE
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 373-3000

DIANA A. SILVA
ROBERT D. FOX
MANKO GOLD KATCHER & FOX
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
(484) 430-2312

LAURA HUGHES MCNALLY
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5257

*Counsel for Sunoco Pipeline LP*

KATHERINE LA HART, individually and on behalf of a class of others similarly situated; ROBERTA GELTCH, individually and on behalf of a class of others similarly situated; JAMES GELTCH, individually and on behalf of a class of others similarly situated; ANDREW MELA, individually and on behalf of a class of others similarly situated; HEATHER MELA, individually and on behalf of a class of others similarly situated; W. SCOTT MILLER, individually and on behalf of a class of others similarly situated; MARYIDA MILLER, individually and on behalf of a class of others similarly situated; JOHN VANNI, individually and on behalf of a class of others similarly situated; ANGELA VANNI, individually and on behalf of a class of others similarly situated; KEVIN WOJNOVICH, individually and on behalf of a class of others similarly situated; KRISTINE WOJNOVICH, individually and on behalf of a class of others similarly situated; BASIL TSOLAKIS, individually and on behalf of a class of others similarly situated; FOTEINI TSOLAKIS, individually and on behalf of a class of others similarly situated; GERALD TSOLAKIS, individually and on behalf of a class of others similarly situated; MANTHA NIKOLOUDAKI, individually and on behalf of a class of others similarly situated,

*Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ...................................................................................... 1

ARGUMENT .............................................................................................. 4

I.  SPLP has standing under Article III. ............................................. 4

II.  The District Court has federal question jurisdiction over a federal right of action. ................................................................... 12

III.  The AIA does not bar SPLP's claim. .............................................. 19

IV.  The PSA's pre-suit notice requirement does not compel affirmation of the District Court's order. ....................................... 25

CONCLUSION ......................................................................................... 29

COMBINED CERTIFICATES OF COMPLIANCE ................................ 31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers,*
968 F.2d 401 (3d Cir. 1992) ................................................................ 24

*Amalgamated Clothing Workers of Am. v. Richman Bros.,*
348 U.S. 511 (1955) ............................................................................ 20

*ANR Pipeline Co. v. Iowa State Com. Comm'n,*
828 F.2d 465 (8th Cir. 1987) .............................................................. 24

*Bennett v. Spear,*
520 U.S. 154 (1997) .............................................................................. 8

*Bowles v. Russell,*
551 U.S. 205 (2007) ............................................................................ 28

*City of Milwaukee v. Illinois,*
451 U.S. 304 (1981) ............................................................................ 23

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .............................................................................. 8

*Const. Party of Penn. v. Aichele,*
757 F.3d 347 (3d Cir. 2014) ............................................................... 10

*Cottrell v. Alcon Lab'ys,*
874 F.3d 154 (3d Cir. 2017) ................................................................. 4

*Couser v. Shelby County, Iowa,*
139 F.4th 664 (8th Cir. 2025) .............................................................. 5

*Denny's, Inc. v. Cake,*
364 F.3d 521 (4th Cir. 2004) .............................................................. 18

*Enbridge Energy, LP v. Whitmer,*
135 F.4th 467 (6th Cir. 2025) .............................................................. 5

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)................................................................................. 9

*Finkelman v. Nat'l Football League*,
810 F.3d 187 (3d Cir. 2016) ................................................................. 7

*Fischer v. United States*,
603 U.S. 480 (2024)...................................................................... 13-15

*Gunn v. Minton*,
568 U.S. 251 (2013)............................................................................ 12

*Haaland v. Brackeen*,
599 U.S. 255 (2023)............................................................................ 11

*Hallstrom v. Tillamook County*,
493 U.S. 20 (1989)........................................................................ 26-28

*Hatfield Township v. Lexon Ins. Co.*,
15 A.3d 547 (Pa. Commw. Ct. 2011).................................................. 22

*Holland v. Florida*,
560 U.S. 631 (2010)............................................................................ 28

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).............................................................................. 4

*Mitchum v. Foster*,
407 U.S. 225 (1972)................................................................. 19-21, 24

*MRL Development I, LLC v. Whitecap Inv. Corp.*,
823 F.3d 195 (3d Cir. 2016) ............................................................... 14

*NGS Am., Inc. v. Jefferson*,
218 F.3d 519 (6th Cir. 2000)......................................................... 16-17

*O'Shea v. Littleton*,
414 U.S. 488 (1974).............................................................................. 9

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Olympic Pipe Line Co. v. City of Seattle*,
  437 F.3d 872 (9th Cir. 2006) ................................................................. 4

*Road-Con, Inc. v. City of Philadelphia*,
  120 F.4th 346 (3d Cir. 2024) ............................................................ 4-5

*SFPP, L.P. v. Union Pac. R.R. Co.*,
  No. 05-cv-1015, 2006 WL 8448728 (C.D. Cal. Aug. 30, 2006) ............ 25

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................. 5

*Toll Bros., Inc. v. Township of Readington*,
  555 F.3d 131 (3d Cir. 2009) ....................................................... 7-8, 10

*Travelers Ins. Co. v. Obusek*,
  72 F.3d 1148 (3d Cir. 1995) ............................................................... 12

*United States v. Williams*,
  553 U.S. 285 (2008) ........................................................................... 14

*Vautar v. First Nat'l Bank of Pa.*,
  133 A.3d 6 (Pa. Super. Ct. 2016) ....................................................... 22

*Warner v. Ford Motor Co.*,
  46 F.3d 531 (6th Cir. 1995) ............................................................... 16

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ............................................................................. 9

*Williams Pipe Line Co. v. City of Mounds View*,
  651 F. Supp. 551 (D. Minn. 1987) ................................................. 25-26

## **CONSTITUTIONAL PROVISIONS & STATUTES**

18 U.S.C. § 1512 ...................................................................................... 15

iv

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Employee Retirement Income Security Act
  28 U.S.C. § 1144 .............................................................................. 16-17

Natural Gas Pipeline Safety Act Amendments of 1976 .......................... 27

Pipeline Safety Act
  49 U.S.C. § 60104 ........................................................................ *passim*
  49 U.S.C. § 60121 ........................................................................ *passim*
  49 U.S.C. § 60122 .............................................................................. 15

U.S. Const.
  amend. XI .............................................................................. 13, 19-21
  art. III ...................................................................................... 4, 7, 11

## INTRODUCTION

Appellees, a group of landowners in Pennsylvania (the "Residents"), have urged a state court to immediately shut down operation of the interstate Twin Oaks Pipeline (the "Pipeline") and to impose *ad hoc* safety standards for the Pipeline's operation, even though the controlling federal authority (PHMSA) has authorized the Pipeline to resume operation. The Residents' efforts to use state authority to impose and enforce safety standards on operation of the Pipeline violate Congress's clear directive in the federal Pipeline Safety Act ("PSA") that the regulation of interstate pipeline safety is purely within the control of federal authorities.

SPLP has shown that this Court should reverse the judgment of the District Court and find that the PSA grants SPLP an express federal right of action to prevent violations of the PSA, and so confers federal jurisdiction. This Court should further reverse the District Court's mistaken holding that the Anti-Injunction Act bars SPLP's action for an injunction to prevent the Residents from violating the PSA's prohibition against unlawful safety regulation by a state authority, because the PSA expressly authorizes such relief.

1

The Residents fail to undermine those conclusions. *First,* for the first time, they argue that SPLP lacks standing to enforce the PSA's prohibition against interference with safety regulation of interstate pipelines, purportedly because SPLP's need for relief is speculative and contingent. That argument conflicts with the Residents' own urgent pleadings in state court demanding an immediate shut down of the Pipeline, which if allowed to proceed would have an immediate and irreparable impact on SPLP's interests and violate the PSA.

*Second,* the Residents argue that the District Court correctly concluded it lacked subject matter jurisdiction, but like the District Court below, the Residents erroneously import into the analysis inapposite removal jurisdiction concepts. It does not matter that in a state court proceeding SPLP would have a preemption affirmative defense, because the PSA grants an express federal right of action to enjoin violations of the PSA and federal courts have jurisdiction over federal rights of action.

*Third*, the Residents' argument for application of the Anti-Injunction Act to bar SPLP's suit ignores the plain language of the PSA. Instead of straightforwardly applying the PSA's text permitting an action in fed-

eral court to enjoin all "governmental authorities," which necessarily includes state courts, the Residents argue the Court should read into the PSA a carve-out immunizing state courts from the PSA's broad injunctive scope. But the Anti-Injunction Act neither requires nor permits courts to rewrite statutes to make the Anti-Injunction Act apply where it does not, and the Residents' argument must be rejected.

*Finally*, the Residents argue that the judgment below should be affirmed on the alternative basis that SPLP's suit fails to comply with the PSA's 60-day pre-suit notice requirement. 49 U.S.C. § 60121(b). But the 60-day notice period has already long-since elapsed, and ordering the action dismissed on the basis of a moot technicality would serve no purpose, as SPLP would simply re-file the action. Neither this Court nor any court that has ever considered the PSA's pre-suit notice requirement has held that it is an inflexible precondition to be mechanistically applied irrespective of context or Congress's broader purposes for the PSA. Under these circumstances, this Court should decline to affirm the judgment below on the alternative basis of the 60-day notice requirement, and the Residents' argument should be rejected.

For these reasons and all those stated in SPLP's Opening Brief, the judgment below should be reversed.

## ARGUMENT

## I.    SPLP has standing under Article III.

The Residents argue for the first time that SPLP lacks standing to maintain its sole claim for relief under the PSA.  RB 14–23.  Standing under Article III requires the plaintiff to establish an injury in fact that is both fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The Court assesses standing at the time of the suit.  *Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 354 (3d Cir. 2024).  This assessment is separate from and precedes "any assessment of the merits of the plaintiff's claim."  *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017).  Indeed, "[t]o maintain this fundamental separation between standing and merits at the dismissal stage," the Court "assume[s]" that the "plaintiff has stated valid legal claims."  *Id*.

A pipeline operator's standing to bring a declaratory judgment action in light of a threatened shut down of its pipeline is well-established and non-controversial.  *See, e.g.*, *Olympic Pipe Line Co. v. City of Seattle*,

4

437 F.3d 872, 874 (9th Cir. 2006) (no dispute about jurisdiction over operator's PSA claim in light of threatened shut down); *Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 472–73 (6th Cir. 2025), *cert. granted,* No. 25-582 (Nov. 17, 2025) (same); *Couser v. Shelby County, Iowa*, 139 F.4th 664, 668 (8th Cir. 2025) (same in light of local regulations on planned construction of pipelines), *cert. denied sub nom. Shelby Cnty. v. Couser*, No. 25-419, 2026 WL 79941 (U.S. Jan. 12, 2026). SPLP plainly has standing to prevent violations of the PSA that would interfere with its operation of the Pipeline.

## A. The Residents' state court proceedings pose a likely and substantial risk of injury to SPLP.

Because SPLP seeks only prospective relief in the form of an injunction and declaratory judgment, to satisfy the "injury in fact" requirement for standing it must show that it is likely to suffer future injury. *Road-Con*, 120 F.4th at 354; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 341–42 (2016) (explaining that "the risk of real harm" can satisfy the concreteness requirement). That future threatened injury is "imminent" if it is "certainly impending, or there is a substantial risk that the harm will occur." *Road-Con*, 120 F.4th at 355 (emphasis and citation omitted). The

requirement is readily met here. The Residents' urgent pleas for an immediate shut down of the Pipeline would result in the disruption of a major interstate energy source and unauthorized regulation of the safety standards by which SPLP conducts its business and on which its customers and the public rely.[1]  JA30–32 (¶¶ 47–53).

The Residents argue that SPLP fails to allege the required injury because a preliminary injunction order has not yet been entered and SPLP did not provide a "potential timeline" for the entry of any such order.  RB 17–18.  When the La Harts filed their request for an emergency shutdown of the Pipeline on July 9, 2025, however, they told the state court that the relief sought was "critical, appropriate, and immediately necessary" and "[i]mmediate court intervention" was required.  JA192, JA207, JA213–17.  The other Residents seek the same injunctive relief in six other lawsuits.  JA27–28, JA 30.  SPLP filed its declaratory judgment action and motion for injunctive relief in federal court on July 18, 2025, while the briefing on the motion in state court progressed.  JA30.

---

[1]  The substantial risk of injury to SPLP remains, as the La Harts' motion is still pending, and the other Residents demand the same injunctive relief in each of their pending state court actions.  AOB 7; JA30.

The Residents' mischaracterization of SPLP's injury as too remote or relying on "mere speculation" is belied by their own urgent requests for "immediately necessary" injunctive relief in state court. JA192. The Residents cannot have it both ways.

The upshot of the Residents' position is that SPLP was required to wait to suffer an injury before seeking injunctive relief to prevent the injury from occurring. That is not the law. The PSA permits parties to seek an injunction to prevent violations of the PSA *before they occur*, and SPLP properly filed suit under the PSA to ensure that the safe operation of its interstate pipeline could continue uninterrupted.

## B. The Residents' actions are the "but for" cause of SPLP's injury.

The second "fairly traceable" element of standing is likewise satisfied because the Residents' misconduct is a "but for" cause of SPLP's likely future injury. *See Finkelman v. Nat'l Football League*, 810 F.3d 187, 198 (3d Cir. 2016). This prong of Article III standing "focuses on *who* inflicted th[e] harm." *Toll Bros., Inc. v. Township of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). SPLP would not face a substantial risk of

harm but for the Residents' demand for the unlawful safety regulation and shutdown of the Pipeline by a state authority.

The Residents argue that tracing SPLP's injury to the Residents' demand is impossible because the state court—not the Residents—will decide what to do with the Pipeline. RB 18–20. But the Supreme Court has cautioned against precisely this kind of argument, because it improperly equates the requirement for an "injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). Even an "indirect causal relationship" suffices for the purpose of traceability, which need not need be "as close as the proximate causation needed to succeed on the merits of a tort claim." *Toll Bros.*, 555 F.3d at 142.

The authorities on which the Residents rely are inapposite: the theory of traceability in each involved "highly attenuated chain[s] of possibilities" with multiple speculative steps. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *see id.* at 411–14 (rejecting standing theory that relied on speculation that Government would use certain authority to surveil certain populations, a federal court would approve the use of that

8

authority, and the Government would successfully intercept respondents' communications); *Whitmore v. Arkansas*, 495 U.S. 149, 156–57 (1990) (holding that petitioner lacked standing where injury relied on conviction at new trial, review by state court, comparison by state court to other capital cases, and state court's failure to properly conduct comparison); *O'Shea v. Littleton*, 414 U.S. 488, 496–97 (1974) (concluding that "prospect of future injury" relied on respondents violating any legitimate state criminal law, resulting in a possible appearance before petitioners wherein petitioners might have followed discriminatory practices).

The chain of causation here is short and direct. The Residents demand an immediate shutdown of the Pipeline and have asked a state authority to so order, in violation of the PSA. No speculative or attenuated links that are so far removed from their distant "ripple effects" or "downstream injury" exists between the Residents' serial requests for injunctive relief and SPLP's injury under the PSA. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

### C. SPLP's injury would be redressed by an order demanding the Residents to withdraw their requests for injunctive relief.

The "redressability" requirement also is satisfied here because there is no dispute that SPLP's injury will be redressed by a favorable decision. *Const. Party of Penn. v. Aichele*, 757 F.3d 347, 368 (3d Cir. 2014). Redressability is "closely related" to traceability, so the requirements "often overlap." *Toll Bros.*, 555 F.3d at 142; *see Aichele*, 757 F.3d at 368 ("[B]y establishing causation, [appellants] have also established redressability.").

SPLP requested an order requiring the Residents to withdraw their motion for injunctive relief in state court and prohibiting the Residents from pursuing further injunctive relief prohibited by the PSA. JA38. Because SPLP's injury is caused by the Residents' efforts to use state authority to impose and enforce safety standards on the Pipeline, the injury would be redressed by such an order.

The Residents incorrectly reframe redressability in terms of the potential effects of a federal court order on a state court's actions. RB 20–23. By removing themselves from the redressability analysis—just like they do on the traceability prong—the Residents ignore that SPLP has

10

alleged that *they* have violated PSA and seek a declaratory judgment and injunctive relief that is binding on *them*. *See* JA37 ("SPLP seeks declaratory relief to remedy [the Residents'] violations of the PSA.").

Rather than result in an "unconstitutional advisory opinion," RB 21, the injunctive relief requested here would give SPLP "legally enforceable protection" from the Residents' violation of the PSA, and the declaratory judgment would settle the issue between the parties by precluding the Residents from continuing their efforts to impose and enforce safety standards for the Pipeline using state authority. *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023). As the Residents acknowledge, the relief SPLP seeks would "prohibit [the Residents] from seeking a certain type of relief," RB 21, redressing SPLP's injury caused by that effort.

SPLP accordingly satisfies each element required to establish standing under Article III and the Residents' argument that the judgment below may be affirmed on the alternative basis of lack of standing should be rejected.[2]

---

[2] The Residents make a brief related argument that SPLP's claim is not ripe, which fails for the same reason as their "injury in fact" argument. RB 18. Like that argument, their ripeness argument fails to recognize that a request for prospective relief relying on a real and substantial risk of an imminent future event, like SPLP's, is jurisdictionally

11

## II. The District Court has federal question jurisdiction over a federal right of action.

The District Court's order should be reversed because the court erroneously denied SPLP's motion of the ground that it lacked subject matter jurisdiction. AOB 15–18; *see* JA5. The District Court possessed federal question jurisdiction over SPLP's PSA claim because the PSA creates a federal right of action for injunctive relief. AOB 15–18 (discussing 49 U.S.C. § 60121(a)(1)); *see Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("[A] case arises under federal law when federal law creates the cause of action asserted."). That the PSA's preemption provision gives rise to a preemption defense in state court is irrelevant to the District Court's jurisdiction over SPLP's claim. AOB 17–18.

Despite the Residents' mischaracterization, RB 23–24, SPLP has never argued that the District Court's jurisdiction is based on asserting an affirmative defense of federal preemption, and their reliance on concepts from the removal context are inapposite. AOB 10. Rather, SPLP seeks to vindicate a federal substantive right to prevent violations

---

sound. *See Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995) ("[A] party need not decide between attempting to meet the nearly insurmountable burden of establishing that the relevant injury is a mathematical certainty to occur, nor must a party await actual injury before filing suit.").

12

of the PSA by state authorities, contained within a provision of the PSA titled "Preemption." 49 U.S.C. § 60104(c); JA35-37 (Compl. ¶¶ 60-71). Section 60104(c) does not limit or explain how to vindicate that substantive right. But by creating an affirmative cause of action for "a violation of" the PSA, Congress created a means of vindication:

### § 60121. Actions by private persons

> General authority.--(1) A person may bring a civil action in an appropriate district court of the United States for an injunction against another person (including the United States Government and other governmental authorities to the extent permitted under the 11th amendment to the Constitution) for a violation of this chapter or a regulation prescribed or order issued under this chapter. . . .

49 U.S.C. § 60121(a)(1). Section 60121(a)(1) is clear: "A person may bring a civil action . . . for a violation of this chapter[.]" That includes a violation of Section 60104(c).

The Residents say, however, that the canons of *noscitur a sociis* and *ejusdem generis* "suggest that 'a violation of this chapter' in [S]ection 60121 should not be interpreted so broadly as to create a private cause of action to enforce" Section 60104(c). RB 25 (citing *Fischer v. United*

13

*States*, 603 U.S. 480, 487–89 (2024)).  Neither canon applies, let alone supports the Residents' narrow interpretation of the PSA.

*Noscitur a sociis* "teaches that a word is 'given more precise content by the neighboring words with which it is associated.'" *Fischer*, 603 U.S. at 487 (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)). *Ejusderm generis* directs that "a general or collective term at the end of a list of specific items is typically controlled and defined by reference to the specific classes . . . that precede it." *Id.* (citation and internal quotation marks omitted).  Both are canons of interpretation—rules of thumb—for interpreting ambiguous statutory text.  Where statutory text is unambiguous, however, this Court declines to use them.  *MRL Development I, LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 204 (3d Cir. 2016) ("If the legislature's intent is made plain, 'it is unnecessary for us to refer to other canons of statutory construction, and indeed we should not do so.'") (internal citation omitted).  The Court should decline to do so here because Section 60121(a)(1)'s text is perfectly clear.

Instead of bringing clarity to an unclear statute, the Residents employ canons of construction to manufacture ambiguity where none exists.  The Residents do not explain why "a violation of this chapter"

14

should be read to exclude "a violation of" Section 60104(c), which unambiguously prohibits any "State authority" from "adopt[ing] . . . safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c). Unlike "the residual 'otherwise' clause" that was at issue in *Fischer*, 603 U.S. at 485, Section 60121(a)(1)'s reference to "a violation of this chapter" is not narrowed by any surrounding specificity. *Compare* 18 U.S.C. § 1512(c)(2), *with* 49 U.S.C. § 60121(a)(1). As a result, neither "neighboring words" nor a preceding "list of specific items" bolster the Residents' proposed interpretation of Section 60121(a)(1). *Fischer*, 603 U.S. at 487.[3]

The Residents further argue that "background interpretive rules" counsel against a conclusion that the PSA creates a federal right of action, because Section 60121(d) permits them to pursue "tort remedies" in state court. RB 25–26. That doesn't work. Subsection (d), titled "Additional remedies," states: "A remedy under *this section* is in addition to any other remedies provided by law. *This section* does not restrict a

---

[3] The PSA's civil penalties provision, 49 U.S.C. § 60122, also does not alter the analysis. Contrary to the Residents' contention, this provision does not "identif[y] specific sections of the PSA for which enforcement is contemplated"; it merely enumerates violations that will result in monetary liability to the Government. RB 24.

right to relief that a person or a class of persons may have under another law or at common law." 49 U.S.C. § 60121(d) (emphasis added). Section 60121(d) provides only that the citizen suit provision that allows for an injunction to be brought only in federal court is not the exclusive remedy for all harms involving pipelines. That provision does not somehow give the Residents free rein to violate other sections of the PSA—including Section 60104(c)—through actions taken in the context of state court litigation, and it does not undermine the District Court's federal question jurisdiction over SPLP's expressly authorized claim under the PSA.

Finally, the Residents argue that the Sixth Circuit's decision in *NGS Am., Inc. v. Jefferson*, 218 F.3d 519 (6th Cir. 2000), shows that the PSA does not create a "private right of action to enforce its preemption clause." RB 26–30. In *Jefferson*, the Sixth Circuit considered whether a fiduciary could sue a beneficiary to enforce ERISA's preemption provision, 29 U.S.C. § 1144, which the Sixth Circuit had determined in a separate case "does not create a federal cause of action itself." 218 F.3d at 530 (quoting *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995) (en banc)). Because ERISA's civil action section only permitted the fiduciary to "enforce" ERISA and the beneficiary had not violated ERISA,

16

the Court concluded that the beneficiary was not subject to ERISA's nationwide service provision and thus the district court correctly dismissed the suit for lack of personal jurisdiction. *Id.* at 530–31.

There are two problems with the Residents' attempt to analogize *Jefferson* to the instant case. *First*, ERISA's preemption provision is not analogous to the PSA's prohibition against safety regulation of interstate pipelines by state authorities. ERISA's preemption provision merely states that ERISA "shall supersede any and all State laws insofar as they . . . relate to an employee benefit plan[.]" 28 U.S.C. § 1144(a). Section 60104(c) of the PSA, by contrast, creates a substantive prohibition against any "State authority . . . adopt[ing] . . . safety standards for interstate pipeline facilities or interstate pipeline transportation." 49 U.S.C. § 60104(c). That substantive prohibition may in turn be enforced using the PSA's express federal private right of action, *id.* § 60121(a)(1).

*Second*, a fiduciary's attempt to enforce ERISA's preemption clause against a beneficiary has nothing to do with SPLP's federal cause of action to prevent the unauthorized imposition of safety standards on the Pipeline. SPLP's claim in federal court is not that the Residents' private suits in state court are preempted by the PSA; that is a separate

argument on which the state court can rule.[4]  SPLP's claim in federal court is based on the PSA's express prohibition on state authorities imposing safety standards on interstate pipelines, 49 U.S.C. § 60104, and the Residents' repeated efforts to violate that prohibition.  AOB 2; *see* JA18.  Both a preemption defense and the PSA's federal right of action function to vindicate the supremacy of federal law in the regulation of interstate pipeline safety.  But the availability of one does not negate the availability of the other.[5]  AOB 16–18; *see Denny's, Inc. v. Cake*, 364 F.3d 521, 526 (4th Cir. 2004) ("[T]he fact that a state court *defendant's* assertion of … preemption as a defense does not create complete preemption says nothing about whether that defendant could have brought an action … as a *plaintiff* in federal court.").

The Residents' arguments do not negate the basic proposition that a district court has federal question jurisdiction over a cause of action arising under federal law.

---

[4]  As the Residents correctly point out, SPLP has raised this preemption defense in state court.  RB 30, 40.  They miss that this posture in state court is distinct from SPLP's federal cause of action under the PSA.

[5]  The Residents' statement that the Attorney General could not have brought a claim under the PSA is unavailing for the same reason.  RB 40–41.

18

## III.   The AIA does not bar SPLP's claim.

The District Court further erred by holding that the AIA bars SPLP's request for equitable relief barring the Residents from pursuing their efforts to use state court proceedings to interfere with exclusive federal safety regulation of the Pipeline.  AOB 18–41.  The PSA expressly authorizes a federal court to enjoin "the United States Government *and other governmental authorities* for a violation of [the PSA.]"  49 U.S.C. § 60121(a)(1) (emphasis added).  As to *state* "governmental authorities," that broad authorization is limited only by the outer bounds of the Eleventh Amendment.  *Id.*; AOB 21–25.  Had Congress wanted to exclude state courts from "governmental authorities"—or alternatively, limit "governmental authorities" to only "governmental agencies" or "governmental officers"—it could have done so.  It did not, so the plain text of the PSA should be given full effect.

The PSA also creates a specific and uniquely federal right and remedy in federal court, which would be frustrated if the AIA barred injunctions staying state court proceedings that violate the PSA.  AOB 25–41 (discussing the test outlined by the Supreme Court in *Mitchum v.*

19

*Foster*, 407 U.S. 225 (1972)). The Residents fail to show any reason why the AIA should be interpreted to apply here.

## A. The Residents' arguments improperly ignore the PSA's text.

According to the Residents, this Court should disregard basic principles of statutory interpretation because an exception to the AIA must "be expressed." RB 34–35 (challenging AOB 21–22). As SPLP explained, it is well-settled that whether a statute "expressly authorizes" injunctions of state court proceedings does not hinge on magic words or "express reference" to the AIA. AOB 18–25 (citing, *inter alia*, *Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 516 (1955) and *Mitchum*, 407 U.S. at 237). Instead, express authorization is discerned from statutory text, context, manifest purpose, and other indicia of congressional intent. AOB 19. Considering what Congress chose to include and exclude when drafting the PSA—including a reference to the Eleventh Amendment—is thus an appropriate part of the AIA analysis. AOB 21–25.

The Residents respond that the PSA's reference to the Eleventh Amendment is irrelevant to this appeal because SPLP's action was not brought against the state court itself. RB 32–34. That response misses

20

the point. Whether a statute expressly authorizes federal courts to enjoin state court *proceedings* does not depend on the defendant. In limiting a party's ability to seek an injunction under the PSA only by the Eleventh Amendment, Congress included clear textual authorization for injunctive relief of state court proceedings. That is the case—and relevant to the AIA analysis—even if the defendant in any particular PSA suit under Section 60121(a)(1) is not a state authority.[6]

## B. The PSA could only be given its intended scope by a stay of state court proceedings.

The Residents argue that the PSA does not override the AIA because the second prong of the *Mitchum* test is not satisfied.[7]  RB 37–46. That prong requires a court to determine whether the PSA's right of action and remedy "could be given its intended scope only by the stay of a state court proceeding." *Mitchum*, 407 U.S. at 238. SPLP showed that this prong is satisfied because Congress intended for its prohibition

---

[6] In focusing on the PSA's reference to the Eleventh Amendment, the Residents fail to respond to the fact that the PSA prohibits state authorities—which includes state courts—from adopting or continuing in force safety standards for interstate pipelines. AOB 22–24 (discussing 49 U.S.C. § 60104(c)).

[7] The Residents concede that the first prong of *Mitchum* is satisfied because the PSA "clearly creat[es] a federal right or remedy enforceable in a federal court of equity." *Mitchum*, 407 U.S. at 238; *see* RB 36.

against safety regulation of interstate pipelines by state authorities to be given broad scope to ensure national uniformity in interstate pipeline safety regulation. That intention would be frustrated if state courts, unlike all other state authorities, could interfere with interstate pipeline safety regulation and create the very patchwork of inconsistent state and local safety regulations Congress passed the PSA to prevent.

In response, the Residents argue that the PSA's "savings clause" for certain kinds of civil claims against pipeline operators under state tort law undermines the notion that Congress intended to create a nationally uniform system of safety regulation for interstate pipelines. RB 37–40. Not so.

The PSA's savings clause may allow a person to bring a tort claim in state court against a pipeline operator for *damages*.[8] As long as the

---

[8] The Residents' reliance on *Vautar* and *Hatfield*—neither of which involved the PSA, and both of which affirmed equitable damages awards—are misplaced. AOB 39; *Vautar v. First Nat'l Bank of Pa.*, 133 A.3d 6, 13 (Pa. Super. Ct. 2016) (affirming "trial court properly invoked equity" to award damages above and beyond what estate contained); *Hatfield Township v. Lexon Ins. Co.*, 15 A.3d 547, 550-52 (Pa. Commw. Ct. 2011) (concluding trial court did not err in entering preliminary injunction that required insurance company to pay "immediately for construction work" deemed "necessary to address health and safety issues" that were redressable under the Pennsylvania Municipalities Planning Code).

  
tort claim does not seek to impose or enforce a state safety standard on an interstate pipeline, such an action would not conflict with Section 60104(c)'s prohibition against state authorities imposing or enforcing safety standards. The same cannot be said of the Residents' claim for *injunctive relief*, which unambiguously demands the imposition of state safety standards in violation of Section 60104(c).

Section 60121's "savings clause" cannot be read to supplant Section 60104(c)'s prohibition against safety regulation by state authorities. The "savings clause" is "virtually identical to subsections in the citizen-suit provisions of several [other] statutes . . . [and] means only that the provision of such suit does not revoke other remedies. It . . . cannot be read to mean that the Act as a whole does not supplant [other remedies] . . . but only that the particular section authorizing citizen suits does not do so." *City of Milwaukee v. Illinois*, 451 U.S. 304, 328–29 & n.1 (1981) (considering CWA's citizen suit savings provision). If the savings clause were read to allow any party to obtain equitable relief that violates the PSA from a state court, the entire purpose and intended scope of both the PSA's federal right of action and its prohibition against safety regulation by state authorities would be frustrated. AOB 29–31.

23

The Residents further argue that the second *Mitchum* prong is not satisfied because no legislative history exists "to support a finding that Congress was concerned with proceedings in state courts" when drafting the PSA.  RB 42–46.  But neither *Mitchum* nor any other authority *requires* legislative history to specifically focus on state judicial proceedings to find that the plain text of a statute creates an exception to the AIA.  AOB 32 (citing *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 409 (3d Cir. 1992)).

Regardless, nothing in the legislative history suggests Congress intended to carve out state judicial proceedings from the otherwise exclusive federal authority over interstate pipeline safety regulation.  On the contrary, that history shows "Congress intended to preclude states from regulating *in any manner whatsoever* with respect to the safety of interstate transmission facilities." *ANR Pipeline Co. v. Iowa State Com. Comm'n*, 828 F.2d 465, 470 (8th Cir. 1987) (emphasis added).  The Residents do not explain how the regulation of interstate pipeline safety by way of a state court proceeding falls outside of the preclusion of state regulation of that safety "in any manner whatsoever."  If litigants were allowed to circumvent the PSA by seeking unlawful injunctive relief in

24

state court proceedings, exclusive federal control over interstate pipeline safety would be illusory.

## IV. The PSA's pre-suit notice requirement does not compel affirmation of the District Court's order.

Finally, the Residents urge the Court to affirm the District Court's order based on SPLP's alleged non-compliance with the PSA's 60-day pre-suit notice requirement, 49 U.S.C. § 60121(a)(1)(A), which the District Court did not discuss. RB 47–49; *see* JA4–5. The Residents' alternative argument should be rejected. The PSA's 60-day pre-suit notice period elapsed on September 16, 2025, four months ago. Accordingly, PHMSA has had notice Residents' unlawful effort to impose state safety standards on the Pipeline using a state authority for six months, and it has decided to let SPLP pursue its claim. The pre-suit notice requirement's practical purpose has thus long since been served.

This Court—like every other court that has been asked to construe the PSA's pre-suit notice requirement—should reject the Residents' excessively formalistic approach. *Williams Pipe Line Co. v. City of Mounds View*, 651 F. Supp. 551, 563–64 (D. Minn. 1987); *SFPP, L.P. v. Union Pac. R.R. Co.*, No. 05-cv-1015, 2006 WL 8448728, at *4 (C.D. Cal. Aug. 30, 2006). The PSA's pre-suit notice requirement was not intended

to immunize violations of the PSA for two months while the notice period elapses. To serve the practical purposes of the requirement and "avoid hindrance of citizen suits through excessive formalism," any defects can be cured by an amended complaint after the notice period has elapsed. *See, e.g.*, *Williams Pipe Line Co.*, 651 F. Supp. at 563–64.[9] That is the appropriate result where, as here, a pipeline operator faces imminent injury from a violation of the PSA. *See id.* at 549 (granting TRO "restraining the county and city from interfering" with pipeline operations notwithstanding objections about a lack of strict compliance with the PSA's notice requirements).

The Residents argue that *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989), mandates interpreting the PSA's pre-suit notice provision as a "mandatory condition precedent" to SPLP's suit. RB 48–49. But *Hallstrom* dealt with the Resource Conservation and Recovery Act's ("RCRA") distinct pre-suit notice requirement, not the notice requirement of the PSA. No court applying the PSA, whether before or

---

[9] As SPLP has since explained in briefing below, it has not yet filed an amended complaint because this appeal divests the District Court of jurisdiction over the case. *See* Dkt. No. 21 at 15. However, once this Court vacates the District Court's order and remands, SPLP will do so. *See id.* at n.7.

after *Hallstrom*, has ever held that the PSA's pre-suit notice requirement operates as an inflexible condition precedent to suit.

To get around this fundamental difference, the Residents assert that the Supreme Court "observed that its holding in *Hallstrom* would apply to a number of statutes including specifically the identical notice provision in the PSA's precursor statute." RB 48 (citing *Hallstrom*, 493 U.S. at 23 & n.1). The Supreme Court made no such observation. Instead, the Court merely observed in a footnote that, "[s]ince 1970, a number of other federal statutes have incorporated notice provisions patterned after" the RCRA's predecessor, among them the PSA's predecessor (the Natural Gas Pipeline Safety Act Amendments of 1976). *Hallstrom*, 493 U.S. at 23 & n.1. While it's true that the Court held dismissal is required "where a party suing *under the citizen suit provisions of RCRA* fails to meet the notice and 60-day delay requirements[,]" the Court did not consider the text or purposes of any other federal statute's notice provision or hold that dismissal would be required in any other context. *Id.* at 33 (emphasis added).

The Supreme Court's reasoning in *Hallstrom* nonetheless counsels in favor of applying a flexible construction of the PSA's requirement.

27

Crucially, unlike in *Hallstrom*, 493 U.S. at 30, compliance with the PSA's notice requirement was not necessary to trigger appropriate federal or state enforcement actions to prevent serious environmental damage. On the contrary, PHMSA had been involved in investigating the release—and had already authorized SPLP to resume operating the pipeline—months before the Residents sought to shut down the pipeline and SPLP filed the complaint. JA22-23 (¶¶ 20, 22-24).

The Supreme Court in *Hallstrom* also declined to decide whether the RCRA's pre-suit notice requirement is jurisdictional. 493 U.S. at 31. That is important, because while federal courts have "no authority to create equitable exceptions to jurisdictional requirements," *Bowles v. Russell*, 551 U.S. 205, 214 (2007), they may grant equitable exceptions to non-jurisdictional requirements, *Holland v. Florida*, 560 U.S. 631, 645–46 (2010) (explaining that "flexibility" inherent in "equitable procedures" allows courts to create exceptions to non-jurisdictional deadlines).

Such flexibility is necessary to allow courts to act in exigent circumstances where, as here, a violation of the PSA is imminent. Requiring SPLP, a pipeline operator that has already been working with PHMSA for months, to suffer a significant injury for a 60-day gap just for

28

the sake of formalism contradicts Congress's design in enacting the citizen suit provision of the PSA, and the Residents' alternative argument for affirmance should accordingly be rejected.

## CONCLUSION

The District Court's order should be vacated and the case remanded for further proceedings.

Dated:  January 16, 2026

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:  *s/ Laura Hughes McNally*

LAURA HUGHES MCNALLY
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5257
laura.mcnally@morganlewis.com

DUKE K. MCCALL III
RANDALL M. LEVINE
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 373-3000
duke.mccall@morganlewis.com
randall.levine@morganlewis.com

DIANA A. SILVA
ROBERT D. FOX
MANKO GOLD KATCHER & FOX
Three Bala Plaza East, Suite 700
Bala Cynwyd, PA 19004
(484) 430-2312

*Counsel for Sunoco Pipeline LP*

## COMBINED CERTIFICATES OF COMPLIANCE

In accordance with Local Appellate Rules 28.3(d) and 46.1(e), I certify that all attorneys whose names appear on this brief are members in good standing of the bar of this Court or have filed an application for admission.

In accordance with Local Appellate Rule 31.1(c), I certify that the texts of the electronic brief and paper copies are identical and that Microsoft Defender Offline was run on the file and did not detect a virus.

In accordance with Federal Rule of Appellate Procedure 32(g)(1), I certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,850 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), according to the word count of Microsoft Word 365. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated:  January 16, 2026          *s/ Laura Hughes McNally*

31

## CERTIFICATE OF SERVICE

I hereby certify that counsel for all parties are registered as Filing Users of the Court's CM/ECF system and that a copy of the foregoing Brief of Appellant and Appendix will be served electronically on this date by operation of the Court's CM/ECF system.

Dated:  January 16, 2026          *s/ Laura Hughes McNally*